## CAIN *vs.* BUSBY *et al.*

1. It is error in the Court to charge the jury on a state of facts not warranted by the evidence.
2. If one who claims title to property be present when another makes a voluntary conveyance to third persons and does not object to the making of such deed, it is a circumstance to show that such person had no title to the property conveyed, but recognized the title to be in the donor.
3. Although the charge excepted to is evidently a mistake, still, if it stands in the record as the act of the Court, and is erroneous, such error must be corrected.
4. Although a party impliedly admit title to be in another, he may, notwithstanding, show that he had the title, and if he does, satisfactorily, his title will be protected against such admission.
5. It is illegal for a witness to testify that one made other deeds of gift of all her property among her children. The deeds themselves are the best evidence of the fact, as well as of what they conveyed.

Trover, from Baker Superior Court. Tried before Judge ALLEN, November Term, 1859.

Nimrod Busby, jr., and wife, and Samuel A. White, guardian of Mary Jane Cain and John R. Cain, jr., brought their action against John R. Cain to recover four slaves, viz: Mary, Harriet, Martha and Green.

On the trial, the plaintiff in the Court below introduced the following evidence:

Cain *vs.* Busby *et al.*

Silas A. Stokes testified, that he wrote the deed of gift from Lydia Cain to Benjamin Cain's children; he was one of the witnesses; saw it executed by the donor, Mrs. Cain; was executed on the day it bears date; plaintiffs are the children of Benjamin Cain; White, who sues as guardian, married the widow of Benjamin Cain; Elizabeth Cain married Busby, one of the plaintiffs; she is under 24 years of age; John R. Cain, another of the plaintiffs, under 21 years; the deed was made at the house of Penelope Cain, widow of Benjamin, in Macon county, Georgia; Lydia Cain, the donor, lived a little piece off, in the same neighborhood; defendant lived with his mother; Lydia Cain, defendant's mother, moved from Emanuel to Macon county; she resided there when witness moved to the county of Macon in 1834 or '35; defendant moved to the county some years after, and lived in the same house with his mother, Lydia Cain; during all this time the negroes were in the possession of Mrs. Cain, including the time she and defendant lived together; Lydia Cain had possession more than four years before execution of the deed; the defendant moved away from Macon county in 1845 or '46; does not know whether he carried the property mentioned in the deed with him; Lydia Cain was not in debt at the time of executing the deed; does not know what was the condition of defendant at the time; defendant was present or about the house when the deed was executed; helped witness bring the table on which the deed was written; at the same time, Mrs. Cain made similar deeds of all her property to her other children, one of which was to defendant; Benjamin Cain's children were the grandchildren of Lydia Cain; the latter remarked at the time that she would have to keep her negro woman Mary to wait on her while she lived; at the date of the deeds, she had no negroes except Mary and her children.

The deed of gift from Mrs. Cain, dated June 16th, 1842, for Mary "and her increase," to Elizabeth Ann, John R. and Mary Jane, heirs of Benjamin Cain, deceased, was then read. Said deed recorded in 1845.

Mary Simpson testified, that she saw the woman Mary at defendant's house in 1851; saw her last in 1852; she was cooking and doing house work; did not see defendant use any control over her, though she was waiting on defendant's

wife; knew Martha, who was about 9 years old; did not know the names or ages of the other two.

Pleasant A. Waddell testified in relation to the value of said negroes.

Frederick J. King testified, that defendant told him that his motive for going to Randolph county was to run Mary and her children after his mother's death, and to keep them out of the hands of Samuel White. He testified in relation to the value of the hire. Lydia Cain died in 1849.

Pleasant A. Waddell again testified, that said negroes were in possession of defendant from the year 1847 until the year 1852, with the exception of three or four months; defendant had said negroes run off to Early county, and were then in possession of James Crawford, and during the time Crawford had them, the defendant told witness that Samuel White never should have them in his possession, and that he was willing to settle with the heirs and pay them $200 00 apiece for their claim on said negroes.

Frederick J. King testified, that there was a division of negroes by Lydia Cain, and witness received one of the deeds, made to his wife's heirs, of the same family of negroes; defendant went with witness and saw the deed recorded, and made no objection to it; heard him say he had bought Snell's interest, who was one of the heirs of Lydia Cain, and that he intended to buy the interest of the other heirs.

Jesse Robson testified, that he knew Mary, a negro woman, in possession of defendant, ever since in 1845, with her children. He gives their value, etc.

Frederick J. King again testified, that he heard defendant say, between 1840 and '44, that he was not able to pay his debts, and was $1,200 00 worse than nothing; knows of no property he owned or claimed from 1844 to '49; he got into a fight with Hiram Hall, bit a piece of his lip, and Hall got a warrant for him; he was lying out, and his mother interceded and settled the case, and defendant came to witness' house and the case was there settled; his mother gave five cows and calves to settle the case; was acquainted with her from 1834 to '44; she never was enthralled with debt in any way while he knew her; she was arrested in a case of trover to compel her to give up William T. Cain's property, which property she had in possession; she never was arrested for debt during her life; defendant paid no debts for his

mother, so far as witness knew; she generally settled his; witness did have a negro woman named Mary, in right of his wife, in possession; never sold her to any .person; Mrs. Cain, witness' mother-in-law, got witness to make a deed to her "for satisfaction," and when witness went to sign it, saw it was to John Cain; never received any anything from defendant for said negroes; the negroes were then in Mrs. Cain's possession, and were never out of her possession during her life.

The plaintiff here closed.

Defendant then introduced the following evidence:

James Hatfield and wife testified: That they had known Lydia Cain from 1840 to '44, and regarded her as unsound in mind, and wholly unfit to transact any sort of business; witnesses came to that conclusion from the fact that it took some one to mind her when she was with them.

Elvira Hatfield says that she frequently heard Lydia Cain say that the negroes that were there were for John R. Cain.

Jane Lanier and Mary King testified: That Frederick J. King, by virtue of his marriage, became entitled, from the estate of Nathaniel Cain, to four negroes—a woman named Mary and her three children; Mary is now in possession of John R. Cain, and has been for a number of years before he came to Randolph county; he has been in Randolph since 1845, and has claimed the negroes all the time as his own; Mary's children now in possession of defendant are, Jack, Harriet, Martha, Nicey, Charles and Isaac; defendant claimed Mary and her children before and after Mrs. Cain's death.

A deed dated 1st day of February, 1836, from Frederick J. King to John R. King, conveying to him all the interest of the former in the estate of Nathaniel Cain, deceased, in consideration of the sum of $100 00, was then read to the jury.

Also, a bill of sale, dated 21st day of February, 1845, from Lydia Cain to Barnabas L. W. Snell for Mary and her children, in consideration of the sum of $500 00.

Also, a bill of sale of same date from said Snell to defendant for Mary and her children, for the consideration of $500, and which recites that said negroes of right belong to said defendant.

The jury having returned a verdict for the plaintiff, coun-

sel for defendant moved for a new trial on the grounds following:

1st. Because the verdict is contrary to law and the weight of the evidence.

2d. Because the verdict is contrary to the charge of the Court.

3d. Because the Court erred in its charge to the jury in this, viz: "That if the jury believe, from the evidence, that Lydia Cain, for four years previous to 1842, held the property sued for adversely, claiming the same, and made the deed of that date to plaintiffs, and the defendant was present consenting to the same, and took a benefit therefrom, then the plaintiffs are entitled to recover in this case.

"That if the above is true, then it would make void the deed both of 1836 and 1845, so far as this case is concerned.

"That the deed of 1845 conveyed no title from Lydia Cain, if she made the deed of 1842.

"That the deeds of 1836 and 1845, the one reciting the other, must be construed to mean one paper and one transaction, and must stand or fall together; and if the jury believe they were obtained by fraud, then they are void as to the plaintiffs."

4th. Because the Court erred in refusing to charge as requested by defendant, but in qualifying the same, as hereinafter stated:

1st Request. "When two persons are in possession of personal property, one being without title, and the other with it, the possession is in the latter."

The Court charged this as true, when the possession of both parties took place at the same time; but the proposition did not apply when both parties did not go into possession at the same time.

2d. "That the silence of the defendant at the time of the voluntary conveyance to plaintiffs, does not estop him from setting up his previous title, his silence not being any fraud on them, if they paid no value."

The Court qualified the request by stating, "unless defendant took some benefit or advantage thereby."

3d. "That a voluntary conveyance of a slave, if not put on record within twelve months, is void as against subsequent purchasers without notice; and if the jury believe that Snell

was such a purchaser, then the plaintiffs are not entitled to recover."

This the Court qualified by stating that the deed of 1854, reciting the deed of 1845, are to be construed together as one act.

5th. Because the Court erred in allowing the witness Stokes to testify that Mrs. Cain, at the time of making the deed in 1842, made deeds of gift of all her property amongst her children, defendant's counsel objecting thereto, on the ground that the deeds were better evidence of what Mrs. Cain did with the property at the time.

The Court refused the motion for a new trial, and counsel for defendant excepted.

VASON & DAVIS, SLAUGHTER & ELY, for plaintiff in error.

No appearance for defendant.

*By the Court.*—LYON, J., delivering the opinion.

The testimony in this case is very conflicting and unsatisfactory—so much so, that it is impossible to tell, with any degree of confidence or certainty, where the true title is. To illustrate: Stokes, who is a witness for the plaintiffs in the suit, testifies, that Lydia Cain, under whose deed of gift the plaintiffs claim, was living in Macon county in 1834 or 1835, when he moved to that county. Defendant moved to that county some years after and lived with his mother. During all the time, however, before and after defendant moved to Macon, old Mrs. Cain had possession of the negroes. She had possession more than four years before the deed was made. Defendant was present at the making of the deed, and made no objection. This is all of the plaintiff's title, and looks like a plain one. On the other hand, Frederick J. King, a brother-in-law of Cain's, introduced by the plaintiffs, says, he had this negro woman Mary in right of his wife, and made a deed of her to the defendant, though he made it to satisfy old Mrs. Cain, his mother-in-law, and intended to make it to her, but when he signed it, said that it was to John R. Cain. The deed he did make to John R. Cain—at least the one that was put in evidence—was for his interest

in the estate of Nathaniel Cain, deceased, and no negro's name is mentioned, nor any other property, and purports to be in consideration of $1,000 00. Mary King, the wife of Frederick, and sister of defendant, and Jane Lanier, another sister, both testify that Frederick King, by virtue of his marriage, became entitled to Mary and her three children from the estate of Nathaniel Cain. Now if this is true, the negroes did not belong to Lydia Cain, so as to enable her to convey them to the children of Benjamin Cain. But if they belonged to the defendant, why did he want to run them off, to keep White, the guardian, from getting possession of them? or why was he willing to buy the interests of the heirs in these negroes and give them $200 00 apiece for their interests? And I will remark here, these admissions were not applicable to the plaintiffs, though used in that way. The heirs John R. Cain alluded to were the heirs of Lydia Cain or Nathaniel Cain, for he says, in immediate connexion with these admissions, that he had bought Snell's interest, one of the heirs, the witness says, of Lydia Cain, but he was also of Nathaniel Cain. Now, a very pertinent inquiry arises here: How did Lydia Cain acquire title to these negroes, if she ever had one? It strikes me that an answer to that question might end the doubt. Some of these witnesses, the children of old Mrs. Cain, ought to be able to explain the whole matter. They have not done so, but have left the matter in so much doubt, that it is difficult, if not impossible, to tell where the true title is. As it stands, it is a question exclusively for the jury to determine.

1. We think, under the facts of this case, the Court below, instead of charging the jury, " that if they believe, from the evidence, that Lydia Cain, for four years previous to 1842, held the property sued for adversely, claiming the same, and made the deed of that date to plaintiff, and defendant was present consenting to the same, and took a benefit therefrom, then the plaintiffs are entitled to recover," should rather have charged, that Lydia Cain must have been in the possession of these negroes for four years previously to 1842, holding and claiming them adversely to John R. Cain, to entitle plaintiff's to recover against defendant under a statutory title in her favor, but if she held possession of the negroes jointly with him during that period, such possession coud not create a statutory title in favor of, or against either.

Cain *vs.* Busby *et al.*

2. That if defendant was present when Lydia Cain made the deed of 1842 to plaintiff, and did not object thereto, it is a circumstance going to show that at that time he had no title to the property himself, but recognized the title as being in Lydia Cain. The evidence did not altogether authorize the charge as given. The evidence showed her to be in possession, but it also showed defendant to be equally in possession. The evidence did not show that either claimed adversely to the other, nor was there any evidence that the defendant assented to the making of the deed. It is true that he was about the house, and very probably knew of its execution, but he did not assent or object, as the evidence discloses, and in a case of so much doubt as this, a very slight misdirection might make a very material difference in the finding.

Neither should the Court have charged the jury, "that the deed of 1845," (alluding to the deed from Mrs. Cain to Snell), "conveyed no title from Lydia Cain, if you believe she made the deed of 1842." That deed purports to be for a valuable consideration, and if it was so in fact—of which the jury were to judge—it did convey a title, notwithstanding she had made the deed of 1842, which is a voluntary one; that is, conceding that the negroes belonged to Mrs. Cain; besides, that charge takes it for granted that the title was in Mrs. Cain, which the defendant denies.

3. The charge of the Court, "that the deeds of 1836 and 1845, the one reciting the other, must be construed together, to be one paper and one transaction, and must stand or fall together, and if the jury believe that the deeds were obtained by fraud, then they are void as to the plaintiffs," was evidently a mistake. The Court must have alluded to the two deeds, one made by Mrs. Cain to Barnabas L. W. Snell, dated 21st February, 1845, and the one from Snell to defendant, dated 28th October, 1854, for the latter deed does recite the former, and goes very far to show that the first deed was a contrivance to get a title into John R. Cain for the negroes, but the deed of 1836 is from a different person, and has no connection with either of the others. Standing upon the record as the charge of the Court, it is error, and must be corrected.

The Court ought to have given the charge requested by counsel for defendant, and without qualification; that is,

" that the silence of the defendant at the time of the execution of the voluntary conveyance to plaintiff, does not estop him from setting up his previous title." The effect of the defendant's silence at the making of that deed, as we have stated, was only a circumstance going to show that he had no title at the time, but recognized the title as being in Mrs. Cain ; but still, if the negroes really belonged to him at the time, or did not in fact belong to Mrs. Cain, it is his right to show it; and if he does show it satisfactorily, he will be relieved from the effect of such implied admission. He is not estopped from denying either that she had the title, or that it was not in him. An estoppel *in pais* exists only when third persons have acted in the faith of such admissions, and changed their condition in consequence. If, for instance, third persons had bought the negroes from the donees under that deed, on the faith of such admissions, then the defendant would be estopped from setting up his own title in opposition to that : *Jones vs. Morgan,* 13 *Ga.,* 526.

It was improper for the witness Stokes to state in his evidence, against the objection of defendant's counsel, that Mrs. Cain, at the time of making the deed to the plaintiff in 1842, made other deeds of gift of all her property among her other children. If she did in fact make such deeds, the deeds themselves were better evidence of the fact, as well as of what they contained.

Judgment reversed.