## PRITCHETT *et al.* *v.* DAVIS *et al.*

1. Where upon the refusal of a husband and father, who was the head of a family consisting of a wife and minor children, to apply for and have set apart out of his property, for the benefit of such wife and minor children, a homestead of realty, the wife applied for and had such homestead set apart, a lease executed by such husband and father, subsequently to the setting apart of the homestead and during its existence, purporting to convey to third persons all rights to the timber for turpentine purposes, situate and growing on the land so set apart, and conveying also all the right, title and interest of such head of the family in the sawmill timber on the land, to be cut by the lessees or their assigns within ten years, was void and conveyed no rights in such lands nor the timber thereon to the lessees.
2. A proceeding to enjoin an interference with the right of possession by the beneficiaries of property set apart as a homestead, may properly be instituted directly by them.
3. In the trial of a case involving the fact of the setting apart and valuation of a homestead, the original homestead papers are primary evidence; the record secondary.
4. There was no error in granting the injunction in the case made against both of the original lessees.

Submitted April 21,—Decided May 21, 1897.

Injunction. Before Judge Smith. Montgomery county. January 13, 1897.

Mrs. Davis, for herself and as next friend of her two minor children, brought her petition against William & T. J. Pritchett, alleging that plaintiffs held the paramount right to the exclusive possession, use and control of a tract of land described, which had been set apart for their use and benefit as a homestead out of the property of Arthur Davis, the husband and father of the plaintiffs; that defendants had entered on the land, and without lawful right were proceeding to cut and box for turpentine the pine timber growing thereon; that they had

already greatly damaged plaintiffs by such cutting and box-
ing, and would subject them to still greater damage unless im-
mediate steps were taken to prevent them.   The prayer was for
injunction, for the recovery of such sum as damages as might
be proper, and for general relief.

T. J. Pritchett pleaded that the suit as to him should abate,
as he had no interest whatever in the subject-matter thereof.
William Pritchett demurred, for want of equity, and for mis-
joinder of T. J. Pritchett as a party defendant.   He answered,
setting up that the title to all the timber on the premises suit-
able for sawmill and turpentine purposes was in him ; that on
December 21, 1894, the firm of William & T. J. Pritchett
acquired the timber by purchase from Arthur Davis as the head
of a family, but with the full knowledge, consent and ratifi-
cation of plaintiffs, who received in payment therefor the full
benefit of the purchase-price in money, family supplies and
necessaries furnished by said firm to and used by said family;
that on February 13, 1895, William Pritchett became the sole
owner of the timber by purchase of the interest of T. J.
Pritchett ; that the premises had not been legally set apart to
petitioners; that William Pritchett had boxed about one third
of the timber for turpentine, which he had a legal and moral
right to do by virtue of his purchase, and the attempt to
interfere and prevent him from so doing is a part of a deliber-
ate effort on the part of plaintiffs to overreach, cheat and
defraud him; and that he is abundantly solvent and able to
make any bond for the security of any right plaintiffs may
have.   By way of cross-bill he alleges, that recently Mary
Davis and Arthur Davis, for the purpose of defrauding and
damaging defendant, had confederated with several named
persons, and against his protest had entered upon the premises
and cut therefrom about 100 sticks of the best pine timber and
were proceeding to remove the same, and in addition thereto
had deadened the timber on about ten acres of the land
and were threatening and endeavoring to continue with the
greatest rapidity so to do.   Wherefore he prays that they
be enjoined.

On the hearing the plaintiffs tendered in evidence certain

original homestead papers, including the petition therefor, affidavit to the same, schedules, and approval and entry of record. Defendant objected on the ground, that the original papers were not the best evidence of the setting apart of the homestead, but the same should be proved by a certified copy from the records in the office of the clerk of the superior court. The objection was overruled. These homestead papers appeared to have been filed on November 12, 1884, and passed upon and approved by the ordinary on December 1, 1884, and recorded on December 9, 1884. As part of them was offered a sworn return of the county surveyor, that in pursuance of an order to him by the ordinary, he did, on November 24, 1884, lay off and plat from the lands described in the order, for Mary Davis, wife of Arthur Davis, a homestead of 918 acres more or less, of the value of $500. The surveyor's plat accompanied said affidavit. Defendant offered in evidence a certified copy from the records of the superior court, of the petition of Mary Davis, with the schedules and affidavits thereto, being similar to the corresponding portions of the papers introduced by plaintiff, and being accompanied by a similar plat, but having no sworn return of the county surveyor and no entry of approval by the ordinary. The certificate to this copy by the clerk was, "that the above is a true copy from the records of the homestead, etc., of Mary Davis," under the hand of the clerk and the seal of the court. This copy was excluded from evidence, upon the grounds, that the certificate was insufficient and illegal, and that the original homestead papers were the highest evidence.

The testimony of Arthur Davis, his wife Mary, and their son was, in brief, that the lease from Arthur Davis to William & T. J. Pritchett of December 21, 1894, was not made in the presence of any of the beneficiaries of the homestead nor did any of them have any knowledge of the making of the same, and Mary Davis protested against it when informed that it had been done; that she has not by any word or act ratified such lease; that not one dollar of the purchase-money agreed to be paid for the timber embraced therein has ever been paid, nor have any family supplies or necessaries or other thing of value

been paid to Davis or his wife and children for the turpentine and timber privilege; that at and before the making of the lease Arthur Davis informed T. J. Pritchett of the existence of the homestead, and also informed William Pritchett of that fact, and told him that he (Davis) had no legal right to give a lease on the homestead.

Defendants introduced a lease from Arthur Davis to Pritchett & Rhodus, dated March 9, 1891, recorded April 1, 1891, and conveying to them, their heirs and assigns, all right to the entire timber suitable for turpentine purposes on 847 acres of the land in question, for three years from the time the timber is boxed, together with right of way and use of the timber for staves, hoops, still-houses, etc. The consideration of the lease was that the lessees should pay to Davis $150 on March 9, 1891, and the balance, if any, to be paid when the timber was boxed or cut. Also, the lease referred to in the pleadings, from Davis to William & T. J. Pritchett, of all the timber suitable for turpentine and rosin on 871 acres of the land in question, for three years from the boxing of the same, such boxing to commence within ten years from the date of the contract, together with right of way. The consideration stated was $450 "this day paid" to Davis, the receipt of which was acknowledged, this being an advance payment for 22,500 turpentine boxes to be cut on the land, at the rate of $20 per thousand, future payments to be made when the timber was cut and the number of boxes ascertained. This instrument conveyed also all of the right, title and interest of Davis in the sawmill timber on the land, to be cut by the lessees or their assigns within ten years from the date of the lease, for seventy-five cents per acre, $60 being paid in advance on said timber privilege, the receipt of which was acknowledged. This second lease was dated December 21, 1894, and recorded March 13, 1895. Both leases were transferred in writing by T. J. to William Pritchett on February 15, 1895. The petition for injunction was brought on December 19, 1896. T. J. Pritchett made affidavit, that during 1894, and for several years preceding, he was the active member of the firm of William & T. J. Pritchett and supervised the purchases and sales

made by the firm.   From 1884 to 1895 he lived continuously neighbor to Arthur Davis who, as the head of the family, at all times with the full knowledge, consent and approval of the beneficiaries of the homestead, managed and controlled the same, and with their full knowledge, consent, participation, ratification and approval sold the timber as described in the lease to William & T. J. Pritchett.   The consideration for the timber was family supplies and necessaries for the beneficiaries of the homestead estate, furnished by William & T. J. Pritchett and used by said beneficiaries.   Not only did said Mary Davis have a full knowledge thereof and consent to and approve of said purchases and the sale of the timber, but really participated in person in the purchase of said necessaries and the procurement of the sale of the timber and got the full value of the same in said supplies.   Affiant ceased to be a member of the firm on February 15, 1895, and has since had no interest in the lease and the timber.

The court granted the injunction prayed for by plaintiffs, and denied the prayer of the cross-petition.   Defendants assign as error the rulings upon the admission and rejection of evidence before stated; and further contend that the petition could not be maintained by any other than Arthur Davis as head of the family for whose benefit the homestead was taken, in the absence of any allegation or showing as to why he was not made such party plaintiff or of any refusal or disability on his part to bring the petition; that under the law and evidence the injunction should not have been granted, and the relief prayed for by the defendants should have been granted; and that it was error to grant the injunction as to both defendants, T. J. Pritchett having disclaimed all interest in the matter in controversy and the evidence showing that he had no connection with the same.

*John M. Stubbs* and *Harrison & Peeples*, for plaintiffs in error. *Isaiah Beasley* and *James K. Hines*, contra.

LITTLE, J.   1. It will be seen from the foregoing statement of facts, that the homestead estate upon which petitioners based their claim to the premises in dispute and prayer for injunction was allowed and approved on December 1, 1884, and recorded

December 9, 1884 ; while the contracts of lease and sale from the husband and father of the petitioners, and upon which the defendants relied, were executed, respectively, March 9, 1891, and December 21, 1894.

By article 9, section 2, paragraph 1, of the constitution (Civil Code, § 5913 ) it is provided, with reference to property set apart for a homestead, that no court or ministerial officer in this State shall ever have jurisdiction or authority to enforce any judgment, execution or decree against the property set apart for such purpose, including such improvements as may be made thereon from time to time, except for taxes, for the purchase-money of the same, for labor done thereon, for material furnished therefor, or for the removal of incumbrances thereon ; and by the same article of the constitution, section 3, paragraph 1 (Civil Code, § 5914), it is, among other things, provided that the debtor shall not, after the homestead is set apart, alienate or encumber the property so exempted, but it may be sold by the debtor and his wife, if any, jointly, with the sanction of the judge of the superior court of the county where the debtor resides, or the land is situated, the proceeds to be reinvested upon the same uses. A similar provision to that last quoted may be found in section 2847 of the Civil Code. In view of these positive provisions of law prohibiting the alienation or encumbrance of property set apart and subsisting as a homestead, except in the manner and for the purposes therein enumerated, we are only concerned to inquire whether the contracts of lease and sale, executed by the head of the family and relied on by the defendants, amounted to an alienation or encumbrance of the property, or any portion thereof, involved in this controversy. It will be observed that, by the provisions of the contracts of lease and sale, the defendants acquired all right to the entire timber suitable for turpentine purposes, together with the right of way and use of the timber for staves, hoops, still-houses, and were also authorized to cut certain of the timber for sawmill purposes ; all of these privileges to continue and subsist through a series of years. It is therefore apparent that, under the privileges granted, the defendants had authority to cut for sawmill purposes and remove every stick of tim-

ber or tree standing and growing upon this land, of certain given dimensions, or at least so much thereof as could be cut and removed within three years; they also had power and authority to cut and utilize the timber for staves, hoops, and stillhouses during this period of time, there being no limitation as to the character and dimensions of trees to be used for these latter purposes. Hence, under the privileges granted, it was within the power of the defendants to cut and remove from this land every vestige of timber standing and growing thereon, or so much thereof as might suit their convenience and purposes. These broad and extensive privileges and rights certainly amounted to an alienation of all or some portion of the timber growing upon the land embraced within the homestead estate. By section 3045 of the Civil Code realty is defined to include all lands and the buildings thereon and all things permanently attached to either, or any interest therein, or issuing out of or dependent thereon, etc.; and, accordingly, it has been held by this court that trees growing upon land constitute part of the realty. *Coody* v. *Gress Lumber Co.*, 82 *Ga.* 793; *Balkcom* v. *Empire Lumber Co.*, 91 *Ga.* 651, 655; *Morgan* v. *Perkins,* 94 *Ga.* 353. It follows that one to whom growing timber has been conveyed, to be removed within a given time, acquires by reason of such conveyance an interest in the land, subject, however, to be divested if he fails to remove the timber within the time limited by the conveyance. *Morgan* v. *Perkins*, 94 *Ga.* 353, supra. As was said by Justice Simmons in the case of *Coody* v. *Gress Lumber Co.*, cited above, "A sale of growing trees is a sale of an interest in land."

These authorities, and the reason upon which they are predicated, demonstrate that, by the terms of the contracts of lease and sale made by the head of the family for whose benefit the homestead was set apart, a part of the realty embraced in the homestead estate was alienated to the defendants, and thus the inhibitions imposed by the constitution and laws of this State were contravened; and therefore these contracts of lease and sale were void and conveyed nothing to the defendants.

2. It was contended by the defendants, that the plaintiffs could not maintain the proceeding instituted, but that Arthur

Davis, as head of the family, was the only proper party to do so. The wife and family are the chief beneficiaries contemplated by the homestead and exemption laws. The homestead is set apart for their use and benefit; the real use and possession are in the wife and children. Civil Code, §§ 2866, 2874. The possession of the husband is for them, and is therefore their possession. *Tucker* v. *Edwards*, 71 *Ga.* 602. As was ruled in the case last cited, where certain homestead property had been tortiously taken from the possession of the head of the family and the wife was allowed to maintain a possessory warrant for its recovery, in passing upon the question as to whether the proceeding should have been instituted by the husband or the wife: "it is purely technical who should bring it." While it has been frequently ruled by this court that the head of the family could properly maintain proceedings looking to the protection of the homestead estate (*Zellers* v. *Beckman*, 64 *Ga.* 747), it has likewise been ruled that the beneficiaries have such an interest in the use and enjoyment of the property as will entitle them to protect it against an illegal invasion. *Eve* v. *Cross*, 76 *Ga.* 693. Especially were the beneficiaries of this homestead estate entitled to maintain the present action, it appearing that the father and husband had in the first instance declined and refused to apply for the homestead, and that in his stead the wife had applied for and had the same set apart; and the father having subsequently, during the existence of the homestead for their use and benefit, sought to convey away a portion of the property to the use and possession of which they were entitled, in violation of their legal rights, they not only had the right, but indeed were the proper parties to institute this proceeding for the protection of their rights thus sought to be infringed. See *Tucker* v. *Edwards*, 71 *Ga.* 602, supra.

3. In support of their claim to the use and possession of the land involved in this proceeding, and of their prayer for injunction and other relief, the plaintiffs offered to introduce the original homestead papers, including the petition therefor, affidavit to the same, schedules, and approval and entry of record. The defendants objected to the introduction of these

papers, on the ground that the original papers were not the best evidence of the setting apart of the homestead, but insisted that the same should be proved by a certified copy from the records in the office of the clerk of the superior court. This objection, however, was overruled by the court below, and the original papers admitted. The claim set up by the plaintiffs was predicated upon the existence of the homestead in their favor; and it was necessary for them, in order to maintain the proceeding, to show the setting apart of the homestead. For this purpose, the original papers are the highest and best evidence; they are primary evidence of the fact. Civil Code, §§ 5211, 5212. This point was directly ruled in the case of *Brown* v. *Driggers*, 60 *Ga.* 114, where it was held, that an exemplification or certified copy of the plat of homestead and schedule of personalty set apart by the ordinary and approved by him, certified by the clerk of the superior court of the county where the same are recorded, is only secondary evidence, under these sections of the code, and such certified copy is not admissible in evidence until the original, which should be in possession of the party claiming the homestead, is accounted for. A similar ruling was made in *Larey* v. *Baker*, 85 *Ga.* 687. The court therefore properly admitted the original homestead papers, and excluded the certified copy from the records of such papers offered by the defendants.

4. It follows from the rulings made above, that the plaintiffs made a case entitling them to the injunction as prayed, and as each of the defendants was a party to the contracts of lease and sale, the court did not err in granting the injunction as against both of them.

*Judgment affirmed. All the Justices concurring.*