## McWHORTER v. CHENEY.

121  541
s125  169
s125  171

1. The wife of a head of a family may prosecute any appropriate remedy to prevent interference with her homestead interest.
2. Being under no legal disability to institute and maintain an action for the invasion of her homestead rights, she must assert her cause of action within the period of limitation.
3. Plaintiff's right to sue existed from the beginning of the alleged fraud, as she does not disclaim knowledge of the fraud, and the reasonable deduction from her petition is that she had contemporaneous knowledge of the various acts alleged to be fraudulent. A delay to sue for eighteen years renders her demand stale.

Submitted November 28, — Decided December 21, 1904.

Equitable petition.    Before Judge Lewis.    Greene superior court.    August 26, 1904.

An equitable proceeding was brought by Mrs. Sarah H. Cheney against W. P. McWhorter.    In her petition the plaintiff set forth the following statement of facts:    On September 25, 1869, her husband, E. R. Cheney, had set apart to him, as the head of a family, a homestead in a certain (described) tract of land in Greene county, for the benefit of his family, consisting of petitioner and several minor children.    He died on March 21, 1902, leaving her the sole beneficiary of the homestead, his youngest child having attained his majority on September 13, 1896. About the year 1881, E. R. Cheney desiring to run an account with the defendant, and the latter being unwilling to credit him without security, an arrangement was made between them whereby Cheney brought a petition for leave to sell the homestead property for the ostensible purpose of reinvesting the proceeds in lands in Jackson county, and, in pursuance of an order obtained from the court granting leave to sell, executed and delivered to McWhorter a deed conveying to him the homestead premises for a recited consideration of one thousand dollars.    By this arrangement Cheney obtained credit at the store of McWhorter, and became indebted to him from year to year until 1884.    McWhorter having then declined to make further advances, a supplemental petition was filed by Cheney, asking the leave of the court to reinvest the proceeds of the alleged sale to McWhorter in certain lands in Oglethorpe county.    After the prayer of this supplemental petition had been granted by an order of the court, petitioner " joined with her said husband in a deed to said land, of date Nov. 28, 1884, which deed " was duly recorded, conveying "the premises aforesaid to W. P. McWhorter for a consideration therein recited of twenty-five hundred dollars."   In point of fact, " McWhorter parted with only $366.68 in actual cash at the time said second deed was made, and the remainder of the consideration stated therein was a settlement of the open account and other debts which had been made by her said husband to said McWhorter," including certain security debts which her husband had assumed, among them a debt of some $600 which had been charged against him in settlement of an open account due McWhorter by J. S. Cheney, an adult son of petitioner and E. R. Cheney.    The deed

first above referred to "was made in execution of a plan devised or participated in by the defendant, W. P. McWhorter, having for its object the obtaining by him of homestead property as security for debts then in existence and thereafter to be concocted, and not for the purpose of bona fide purchasing said property;" and the "deed and conveyance of date Nov. 28, 1884, was made to said McWhorter in settlement of debts or obligations due at the time to him by said E. R. Cheney, and said deed was not made in good faith for the purpose of conveying to him homestead property for the purpose of reinvesting the proceeds thereof." The petition of plaintiff's husband for leave to sell and reinvest was filed with the full knowledge of McWhorter, "in compliance with an agreement which had already been entered into between [them], whereby said McWhorter was to make advances to said Cheney and take the deed to the land as security," and the petition presented to the court "deliberately and intentionally misrepresented the truth of the transaction." Both of the orders obtained from the court, as well as the deeds made in pursuance thereof, "were in execution of a scheme and device entered into for the purpose of deliberately setting aside and undoing the homestead which had been granted for the benefit of petitioner and her minor children, and for the evasion and setting aside of the rights guaranteed to petitioner in said homestead by the laws and constitution of this State." The defendant "having participated in said scheme, the same is a fraud, the deeds made to him in pursuance thereof are fraudulent, null and void, and he has no shadow or right of title to said property, or the possession thereof, as against the homestead rights of petitioner." The defendant went into possession of the property in the year 1886; has since enjoyed the rents and profits thereof, of the yearly value of $300.00, and is liable to account therefor. No part of the $366.68 paid in cash by McWhorter to plaintiff's husband was in fact reinvested by the latter in other property, and petitioner has received no benefit from the payment of that amount, but has been deprived of her entire interest in the homestead property and its income. The prayers of the petition were: (1) that the deeds made to McWhorter be canceled as fraudulent and of no effect; (2) that the collusive sale of the homestead premises be declared void for fraud; (3) that plaintiff be granted

a decree providing for her occupancy and enjoyment of the homestead premises for the remainder of her natural life; (4) that she have judgment for mesne profits for the time defendant has been in possession of the premises; and (5) that she be granted such other relief as the facts entitle her to receive.

The defendant filed a demurrer to the petition.    The plaintiff was then allowed to amend, over the defendant's objection, by setting up the following additional facts:  The defendant was a merchant at the time the transactions mentioned in plaintiff's petition took place, and he kept correct and complete books.  These books, which are still in his possession and which were recently examined with his consent by petitioner's attorney, will disclose the "truth of petitioner's case."  W. R. Wilson, the guardian ad litem appointed by the court when the homestead order to sell was granted, is in life.   " Said McWhorter therefore has in his possession every fact and all the evidence he needs, and the ascertainment of the truth will not be more difficult because of delay, and he is not hurt because suit was not instituted sooner."   During the life of plaintiff's husband, he "refused to bring this suit; and when petitioner's sons attempted to bring it for her, he objected thereto and prevented the same."  The defendant has always realized that his claim to the land is "defective;" has never repaired or improved the property, though fully able to do so, "because he anticipated this suit;" and as the minor children of petitioner and her husband arrived at age the defendant "endeavored to obtain deeds from them to their interests in this land, thereby indicating knowledge that he had no valid title thereto."  After the allowance of this amendment, the defendant renewed his demurrer, but the court overruled the same.   Exception is taken both to the allowance of the amendment and to the judgment overruling the demurrer to the petition as amended.   The demurrer was based upon the general ground that the petition was without equity, and also upon a number of special grounds, one of which presented the objection that "the petition shows such laches in the petitioner as that she should not be relieved."

Samuel H. Sibley, for plaintiff in error.

James B. & Noel P. Park and James Davison, contra.

EVANS, J.   (After stating the facts.)   The first proposition to be determined in solving the rights of the plaintiff is whether the

widow of the head of a family, who is the sole beneficiary under a homestead, is affected by the ordinary rules of limitation as applied to the recovery of her interest in the homestead property. It would seem that if the wife of the head of a family could assert her rights under the homestead by filing a claim in her own name (*Connolly* v. *Hardwick*, 61 *Ga.* 501), she could prosecute any other appropriate remedy to prevent interference with her homestead interest. *Eve* v. *Cross*, 76 *Ga.* 693. Certainly, upon the refusal of the head of the family to sue, she could maintain an action for any deprivation of benefit to which she might be entitled under the homestead. *Pritchett* v. *Davis*, 101 *Ga.* 236. The general rule is that limitation runs against all persons who are not under disability to sue. The wife or widow of the head of the family being under no legal disability to institute and maintain an action for an invasion of her homestead rights, must assert her rights within the period of limitation. The plaintiff's cause of action accrued upon the fraudulent sale of the homestead, and her right to sue began as soon as she knew of the fraud or by reasonable diligence could have known of it. She waited eighteen years after the alleged fraudulent sale before instituting her suit. She insists that even if the statute of limitations was applicable, her cause of action is not stale, because the defendant's possession of the land originated in fraud and that no length of time could ripen such fraudulent possession into a prescriptive title. It is undeniably true that possession originating in fraud can never ripen into prescription. And if the present suit was to recover the land, the defendant could not plead a fraudulent possession for more than seven years as a bar to a recovery against the true title. The plaintiff does not claim the title to the land, but only a usufruct therein, and her suit is brought to cancel the title of McWhorter as fraudulent and to recover the mesne profits since he has been in possession, and to procure a decree for the use and occupation of the homestead premises during her life. As her husband joined with petitioner in the deed sought to be canceled, it would seem that his estate ought to be in some way represented in the litigation before his deed is vacated. Until the deed from plaintiff's deceased husband to McWhorter is legally vacated, the title to the reversion is in McWhorter. The deed may have been ineffectual to convey the homestead interest,

because of the alleged collusive conduct of McWhorter and plaintiff's husband; but it did convey the husband's reversionary interest, the homestead being taken out under the constitution of 1868. *Huntress* v. *Anderson,* 110 *Ga.* 427. Assuming, however, that petitioner, who is the sole remaining beneficiary of the homestead, is seeking to cancel the sale to the defendant as a means of recovering her beneficial interest, if the cancellation of such sale is not a condition precedent for her recovery, then she could maintain so much of her action as sought to recover her usufruct interest without formally vacating her husband's deed to the homestead estate. That is to say, if the defendant's title is not a good one, is void as against her, it would not estop her recovery of her right to the possession of the homestead property during her life. Thus construed, her action is to recover her usufruct interest in the homestead (which is the right of possession of the homestead land during her life) and damages for withholding that right since 1886, which are alleged to be the mesne profits of the land, and her action is maintainable without making the personal representative of her deceased husband a party. *Pritchett* v. *Davis,* supra.

Petitioner does not allege her ignorance of the fraud at the time of its commission nor at any subsequent time. From her petition it is clearly inferable that she was cognizant of the fraud from its inception. She signed the deed of 1886, and McWhorter went into possession that year. If there was no reinvestment, she must have known it from the beginning. Besides, she alleges that as her children would arrive at majority, the defendant would attempt to get deeds from them, and that her youngest child arrived of age more than seven years before the bringing of her suit. The only excuse offered for this long delay of eighteen years is that "her husband refused to bring the suit, and when petitioner's sons attempted to bring it for her, he objected thereto and prevented the same." This allegation does not amount to a charge of duress on the part of the husband; and even if it did, McWhorter is not alleged to be responsible therefor. Her right to sue, from all the allegations of the petition, existed from the beginning of the alleged fraud, as she does not disclaim knowledge of the fraud and the reasonable deduction from her pleadings is that she had contemporaneous knowledge of the various acts alleged to be fraudu-

lent. In another part of this opinion it was pointed out that this was not an action of ejectment; that the title in reversion was not involved, but the suit was for the recovery by the sole beneficiary of a homestead usufruct and damages in the way of mesne profits for interference with her enjoyment of the homestead property. The demurrer does not set up prescription on the part of the defendant, but attacks the case as made by the petition as a stale demand. Now it is a familiar doctrine that not only do the various limitations apply equally to all courts, but, in addition, courts of equity may interpose an equitable bar whenever, from lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights. Civil Code, § 3775. Eighteen years have elapsed since the alleged fraud was committed; the husband is dead, and the ascertainment of the truth made more difficult. Equity follows the analogy of the law; and even in suits to recover land, when fraud is charged, it has been held that "the period of limitations applicable to an action . . for the fraud is the same as that which would apply to an action for the land, to wit: seven years from the discovery of the fraud." *Cade* v. *Burton*, 35 *Ga.* 280. "If the defendant has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitations shall run only from the time of the discovery of the fraud." Civil Code, § 3785. The statute of limitations is a statute of repose. When a person is defrauded and has knowledge of the fraud, the law expects him to ask redress, if at all, within the period of limitation. If he waits for a longer period, he is bound by his laches. The petition does not charge the defendant with any conduct the effect of which was to debar or deter her from sooner bringing suit. We therefore conclude that the cause of action set out in the plaintiff's petition was a stale demand, and the court should have sustained the demurrer thereto.

*Judgment reversed. All the Justices concur.*