## CHENEY *v.* McWHORTER.

The petition as first amended was held to be a stale demand. It was, therefore, not error for the court below to disallow a proffered amendment which did not cure the petition in this regard.

Submitted February 24,—Decided March 28, 1906.

Equitable petition. Before Judge Lewis. Greene superior court.
August 3, 1905.

*James Davison* and *James B. & Noel P. Park,* for plaintiff.

*Samuel H. Sibley,* for defendant.

BECK, J. Before the remittitur was entered in the court below,
after the rendition of the first opinion of this court in the present
case (121 *Ga.* 541), Mrs. Cheney sought to amend her petition by
alleging, that she was led to believe by McWhorter that the deed
which she and her husband signed in 1884 was a security deed;
"that she was made to believe by her said husband and the said
McWhorter that even if said debt was not discharged during the
lifetime of her husband, she would have the right to take possession
of said land under her homestead rights, upon his death, should
she survive him," and that said McWhorter led petitioner and her
husband to believe that "as soon as said debt was paid in money
or by the rents, said land would be surrendered by him;" that her
husband did not deliver possession of the premises at the time the
deed was executed, but remained in possession until more than a
year thereafter. "Petitioner alleges that the conduct of said
McWhorter, to wit, his failure to make any improvements on said
land, satisfied the mind of petitioner and led her to believe that he
only held said land until the rents or income should be sufficient to
pay the amount due him by her said husband, and that he did not
hold the same adversely to her rights; . . that she had often
heard her husband say the land was only held by McWhorter for
the rents to pay the debt due him by her said husband, and it
would come back to them when this was accomplished." Petitioner
"is a woman without business experience or capacity." She had
implicit faith in both her husband and McWhorter. "Petitioner's
husband was a deacon in the church of which the said McWhorter
and petitioner were also members. When, therefore, she was asked
to sign the deed to McWhorter, upon the representations of her
husband that it was to secure him, she did not have cause to doubt
it or to investigate." For all of which reasons petitioner "was
lulled into a sense of security, and to these facts and circumstances
was due her failure to employ the necessary means to discover said
fraud; by reason of said facts she was actually deterred from
sooner discovering the fraud or even suspecting that any fraud had
been perpetrated upon her." She did not discover the fraud until

1900, when her sons "undertook to ascertain just what was claimed by Mr. McWhorter." She then became aware for the first time that the land was claimed absolutely by McWhorter. She did not bring suit at that time, for the reason that she "was deterred by her husband, who would not allow her to bring suit for the land, and the action on the part of her husband was through the influences of 'the said McWhorter." McWhorter demurred to the amendment, on the grounds, among others, that no sufficient fraud is alleged "that has misled petitioner, or prevented her suing, nor is any such alleged with sufficient particularity and definiteness to enable defendant to defend against the same," and that plaintiff is guilty of such laches as to prevent a recovery. Defendant also renewed his former demurrers to the petition as originally amended. The demurrer was sustained and the amendment disallowed. The plaintiff excepted.

Of course the general and very vague allegations, that petitioner "signed the same" (the conveyance to McWhorter executed in 1884), and that "said McWhorter led petitioner's husband and your petitioner to believe," etc.; that "she was made to believe by her said husband and the said McWhorter that even if said debt was not discharged during the lifetime of her husband, she would have the right to take possession of said land under her homestead rights, upon his death, should she survive him,"—which appear in the first, fourth, and fifth paragraphs of the proffered amendment, should have been stricken upon special demurrer, on the ground that no act of fraud was alleged with sufficient particularity and certainty to entitle petitioner to recover. And beyond these general allegations of fraud on the part of the defendant, no act of his is even contended by the plaintiff to have been fraudulent, except by the allegations contained in the sixth ground of the amendment under consideration, which are, in substance, that the failure of the defendant to make any improvements upon the land "satisfied the mind of petitioner and led her to believe that [the defendant] only held said land until the rents or income should be sufficient to pay the amount due him by her said husband, and that he did not hold the same adversely to her rights." It needs no discussion to demonstrate that these allegations were clearly incapable of withstanding the attack of the special demurrer just referred to.

But taking the amendment as a whole—retaining those allegations which ought to have been stricken upon the special demurrer —we can not see how it avoids the decision of this court (121 *Ga.* 541) that the petitioner is precluded from a recovery, by her laches. The substance of her amendment is that she was led to believe that the quitclaim deed which she signed with her husband in 1884 was only a deed to secure the payment of her husband's debt to the defendant, and that she only learned that McWhorter claimed title to the land when her sons investigated the matter two years prior to her husband's death. But the fraud alleged in the petition, and the only fraud upon which there could be a recovery under the facts and circumstances of this case, consisted in the scheme of the defendant and of the petitioner's husband to convey the homestead property to McWhorter, under judicial order of sale for reinvestment, and to apply the proceeds thereof to the payment of the husband's debt to McWhorter. And how the character of the subsequent conveyance executed in consummation of the alleged unconscionable scheme has any bearing upon the question of the plaintiff's actual knowledge of the fraudulent intent and failure to reinvest, whether it be quitclaim deed or deed to secure a debt, it is difficult to conjecture. It is true that the petitioner denies in general terms that she had knowledge of the fraud until 1900, but it does not appear from the amendment that she was ignorant of the failure to reinvest, or that she did not know, when she indorsed the original petition for sale and reinvestment, that the proceeds of the sale would take the direction given them by her husband. If as a matter of fact she did not know of the fraud, no sufficient reason appears why she should not have discovered it long ago. In the first amendment to the petition it is alleged that as each of petitioner's children would attain his or her majority, McWhorter would try to get a deed from such child to the land in question. This in itself should have put her on notice that McWhorter was holding the land adversely to her; and indeed she alleges that she several times sought to institute this action through the aid of her sons, but that each time she was deterred by her husband. Moreover it does not appear that she has ever made any effort to ascertain whether the rents had not discharged the indebtedness; and construing the last amendment with the petition as first amended, we can not escape the conclusion reached by this

court in the former opinion rendered in this case, that "it is clearly inferable [from the record] that she was cognizant of the fraud from its inception," and that she is precluded from a recovery, by her own laches.

It follows that the court below did not err in refusing to allow the amendment and in dismissing petitioner's case.

*Judgment affirmed. All the Justices concur.*