HADDEN *v.* THOMPSON, executrix, *et al.*

No. 15720. FEBRUARY 6, 1947. REHEARING DENIED MARCH 20, 1947.

*M. C. Barwick,* for plaintiff.  *Q. L. Bryant,* for defendants.

WYATT, Justice.  The plaintiff plants his case upon the contention that the deed executed by the plaintiff and the defendant to John H. Hadden was void, because (a) it was obtained by fraud; (b) it was never unconditionally delivered to the grantee; and (c) it appeared that the deed was prepared to be executed by three

named grantors, and was not to be effective until such execution, and only two of the grantors signed the deed.

Irrespective of whether the evidence was sufficient to carry either or all of these issues to the jury, we think that the direction of a verdict was not error. Under the undisputed evidence, which showed that the defendant had been in the undisturbed and uninterrupted possession of the land in question for more than seven years under a duly recorded deed, the plaintiff must rely for a recovery, if at all, upon the defendant's fraud. Conceding that the evidence might have been sufficient to show fraud attributable to the defendant, the plaintiff's own testimony was such as to require a verdict against him. He testified: "My father died December 24, 1944. I have not put my foot in the Hadden place that Mrs. Thompson was cultivating since I moved away from there thirteen years ago, what I mean out in the fields. I have been in the yard and in the house. As to whether I knew in November, 1937, that my father had made Mrs. Mamie Thompson a deed to this land, I know that he had made her one, me one, and my brother one. But in November, 1937, while I was living on Mr. W. L. Thompson's place, Mrs. Thompson did not come to see me and tell me or he and Mrs. Thompson tell me about this deed, and I did not talk with them about it. . . Mr. and Mrs. Thompson did not tell me under what arrangement they were holding this land, and that it was arranged to take my father and take care of him, and that if I would take my father and take care of him that I could have it myself. They didn't do that. I didn't go down to see about the property at all. (Here it was admitted that the plaintiff did not pay any taxes on the property in question.) My father died in December, 1944. I never have made any tax return. The reason why I didn't make it, it wasn't mine. It was my father's as long as he lived. But I did not make any returns during the year 1945. It was my father's as long as he lived, and at his death it went to his heirs. The reason I did not give in these taxes after my father's death is because I wasn't supposed to. I wasn't in possession of it; I was supposed to go in possession of it, but my sister wouldn't turn the deeds loose, and she had them and it went into a lawsuit. I knew mighty well about the improvements that my sister was putting on this property. I knew mighty well that she was improving the

property. As to when I knew that, I went there once and there had been a well dug there. I don't know exactly what year that well was dug, but it was a couple of years, maybe a little longer, after I moved away. It was dug sometime after I moved away. I knew that Mrs. Thompson was claiming that property. I knew that she had put other improvements there—ceiled a kitchen. That was sometime along the last part of 1937. Sometime about December after I left from over there—I knew then that she was claiming title to that land. The first objection I made to this is when I filed this law suit. . . I did not know really that she had this deed until about two weeks after I signed loose. I didn't know it was made over to her until two weeks after I signed loose; about two weeks after it was made over to her, and then I knew it. . . I knew all the time that Mrs. Thompson was holding under that deed. I knew after I signed loose. In two weeks after I signed loose, then I knew it was turned over to her. That was something like two weeks after I signed loose. I don't remember the day I signed this deed to my father. But it was two weeks after then I knew it was transferred."

In *McWhorter* v. *Cheney*, 121 *Ga.* 541, 547 (49 S. E. 603), this court held: "Eighteen years have elapsed since the alleged fraud was committed. The husband is dead, and the ascertainment of the truth made more difficult. Equity follows the analogy of the law, and even in suits to recover land, when fraud is charged, it has been held that the 'period of limitations applicable to an action . . for the fraud is the same as that which would apply to an action for the land, to wit, seven years from the discovery of the fraud.' *Cade* v. *Burton*, 35 *Ga.* 280. 'If the defendant has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitations shall run only from the time of the discovery of the fraud.' Civ. Code 1895, § 3785. The statute of limitations is a statute of repose. When a person is defrauded, and has knowledge of the fraud, the law expects him to ask redress, if at all, within the period of limitation. If he waits for a longer period, he is bound by his laches."

The undisputed evidence in this case showing that the plaintiff, with full knowledge of all the facts and of the alleged fraud by which the defendant acquired title, has for more than seven years made no effort to assert his rights, and has sought redress only

after valuable improvements have been made on the property, and after the death of his father, a material witness to the whole transaction (thus making the ascertainment of the truth more difficult), the plaintiff's action is barred by laches; and the trial court did not err in directing a verdict against him.

In so ruling, we do not overlook the fact that as a general rule prescription will not run against a remainderman so long as the life tenant lives, although the life tenant has executed to a third party a deed purporting to convey a fee-simple title. The rule would not apply, however, where the remainderman executed to the life tenant a deed conveying to the life tenant all his right, title, and interest in the property, thus placing in the life tenant a fee-simple title to the property. In such a case a prescriptive title could ripen against the grantor in the last-mentioned deed. Accordingly, in the instant case, where the plaintiff had full knowledge of a subsequent conveyance by the alleged life tenant to a third person, and of alleged fraud in the obtaining of the remainderman's conveyance and the latter conveyance, the duty rested upon the plaintiff to immediately proceed to assert his rights. Not only does the law require the exercise of diligence in discovering fraud, but it also requires diligence in asserting one's rights after the fraud is discovered. See generally, on the rulings here made, *Reynolds & Hamby Co.* v. *Martin,* 116 *Ga.* 495 (2), 501 (42 S. E. 796) ; *Johnson* v. *Sears,* 199 *Ga.* 432 (34 S. E. 2d, 541) ; *Slade* v. *Barber,* 200 *Ga.* 405 (37 S. E. 2d, 143).

We have stated that the plaintiff had full knowledge of the fraud; and this is so for the reason that the only fraud charged in this case was the alleged fact that the plaintiff and the defendant deeded the property in question to their father in trust for a specified purpose (although not shown by the deed), and, knowing this fact, the defendant took a warranty deed from her father.

It is unnecessary to rule on the special grounds of the motion for new trial. Rulings thereon favorable to the plaintiff could not change the results.

*Judgment affirmed. All the Justices concur.*