<hr />

THE GEORGIA PACIFIC RAILWAY COMPANY vs. STRICKLAND.

1. Before secondary evidence is admissible, absence of the primary must be duly accounted for. This applies to a bond for titles counted on in an action to recover land.
2. One who attests a deed knowing its contents, cannot afterwards stand by and see expensive work done under it on the premises, making no objection, and then assert an older adverse title in himself, and recover the premises in opposition to the deed to which his attestation gave authenticity and credit. He is estopped.
3. Possession of a railroad company and its successors, under a grant of the right of way for construction and operation, dates from the commencement of construction, and not merely from completion and the running of trains.

April 27, 1888.

Evidence. Bond for title. Deeds. Estoppel. Prescription. Before Judge RICHARD H. CLARK. Douglas superior court. July adjourned term, 1887.

On June 30, 1885, W. P. Strickland brought complaint

for land against the Georgia Pacific Railway Company, the land being described in the action as land occupied by the railroad track and right of way of said company in the town of Douglasville, and part of lot of land number 16 in the 1st district and 5th section of Douglas county. Attached was an abstract of title as follows: (1) "Deed from Young Vanzant to W. P. Strickland, covering the premises in dispute, and possession under said deed." (2) "Bond for title from Young Vanzant to W. P. Strickland, covering the premises sued for, and possession of the same under said bond prior to the making of said deed, dated the ·day of 1870." The defendant pleaded not guilty, and seven years' possession under color of title.

On the trial, it appeared by oral testimony that, in 1870 or 1871 (certainly before his deed to the Georgia Western Railroad Company), Vanzant had given bond for title to the premises in dispute to the plaintiff and that the latter had entered into possession, having, for several years after the making of the bond, a little house on the premises. It was shown that this bond was conditioned to make title provided the county site was located upon or adjacent to the land in question, and that it was so located. The original bond for title was not produced, and it was shown by the maker that he did not know where it was and never made search for it. This seems to have been the only proof made of such loss; and the court admitted parol testimony as to the paper's contents. A deed was made from Vanzant to the plaintiff on the 1st of April, 1873, covering the premises, but not reciting or referring to the bond for titles.

It further appeared that, in December, 1871, Vanzant conveyed a right of way to the Georgia Western Railroad Company through the land in dispute and other lands, the deed being witnessed by T. J. Flake and the present plaintiff. Flake was shown to have been an agent of the railroad company for the purpose of procuring rights of way; and it was further shown, that in an interview with Van-

zant, Flake and the plaintiff, prior to the making of the last mentioned deed, Flake was notified that the land was held under bond for title from Vanzant to plaintiff, and that Vanzant did not undertake to convey to the company the right of way as to that part. The deed to the railroad company was recorded on April 29th, 1873, prior to that to the plaintiff, which was not recorded until 1887. It further appeared that, in 1871, Vanzant conveyed to the county authorities of Douglas county 40 acres of land adjacent to that in dispute, upon which or part of which the town of Douglasville was located; that two of the county commissioners deeded a right of way through a portion of this land to the Georgia Western Railroad Company on November 12, 1873, and a deed confirmatory of this was made by four of the county commissioners to the Georgia Pacific Railway Company on January 21, 1884, this company being the successor to (by purchase at sheriff's sale and otherwise), and using, the franchise and privileges of the Georgia Western company; that in 1873 or 1874, the Georgia Western railroad was graded through the land in dispute, a deep cut being made which ran almost under the house already mentioned; and that in 1881, the track of the Georgia Pacific company was laid along this way through the cut, and about that time the house was removed by order of the company, it claiming that it was on its right of way.

It was shown that both sides of the right of way were used as streets of the town; that the plaintiff had sold off lots as fronting on one of these streets, and that the town was laid off under two surveys, made at different times, the first of which was in March, 1871, and the second in 1874, when the streets were laid off; the railroad company having had grading done before the latter. There was some conflict as to how far these alleged streets were really used and kept open for public purposes by the municipal authorities.

The jury found a verdict for the plaintiff for the prem-

ises in dispute. The defendant moved for a new trial on grounds which it is unnecessary to set forth. The motion was overruled, and the defendant excepted.

J. S. JAMES, for plaintiff in error.

W. A. JAMES and R. A. MASSEY, *contra.*

BLECKLEY, Chief Justice.

The record is such a medley and mass of stuff that it is impossible to tell in any reasonable time how many errors are covered up in it. We shall deal with only a few of the most obvious points, and leave the case to come up hereafter in a better shape if either of the parties think proper to bring it here again.

1. It was error to admit parol evidence of the contents of the alleged bond for titles from Vanzant to Strickland, the bond being relied upon in the abstract of title, and its non-production not being sufficiently accounted for. If it was in existence and accessible to the party wanting to use it, it should have been produced. If it was lost or destroyed, the fact of its loss or destruction should have been proved as a necessary preliminary to proving its contents by other evidence.

2. If the railroad was graded under the deed from Vanzant to the Georgia Western Railroad Company, the work of grading was a part payment of the consideration for that deed, and the subsequent finishing of the road by the successor of that company, was the completion of the payment. Strickland having witnessed the execution of that deed with a knowledge of its contents, was bound to object to the construction of the work if he claimed title to the premises, and as he did not do so, he is estopped from asserting his title. He is in the situation of one who sees another purchase property and pay for it, and then endeavors to recover it on a title which he did not disclose. That the agent who took the deed in behalf of the com-

pany knew of his claim of title, would have been notice to the Georgia Western company if Strickland had not by attesting the deed virtually given the company written notice to the contrary. When he attested the deed by which Vanzant conveyed the right of way, he impliedly assented to that deed; and if he meant that it should not affect his rights, he ought to have objected to the construction of the road, he having, according to the evidence in the record, actual knowledge both of the contents of the deed and of the work done on the premises at all stages of its progress. His mere attestation of the deed would not have been binding upon him if he had not afterwards stood by and seen money expended on the faith of it. Certainly the Georgia Pacific company had no reason to apprehend that he would ever assert a title in opposition to the deed which he had attested; that company, so far as appears, had no notice whatever of any claim on his part adverse to the title which the Georgia Western company acquired under the deed—the very deed to which his attestation gave authenticity and credit.

3. We do not agree with the apparent position of the court below, that a railway company is not to be considered in continuous, actual and adverse possession of its graded or partially graded work until after track is laid and trains begin to run. We think, on the contrary, that entering upon the right of way under a conveyance of it, and grading or partially grading the line at a given place, will constitute possession at that place, and that mere delay to finish the work and put on trains will not hinder the possession from being complete and continuous. It may take years to finish the work of a railroad, and the prosecution of the work may be suspendend and resumed many times. No mere suspension of work will oust the company from possession. In determining whether there is possession or not under a grant, the nature and purpose of the grant must be considered; and a grant which contemplates the construction and operation of a

railroad, involves for its enjoyment the possession of the premises from the time construction commences and during the whole period construction is in progress.

The application of these views to the present case will carry back the possession to the time when the Georgia Western company entered under the grant to it from Vanzant, and began to construct its road way by clearing and grading for the same on these premises.

The court erred in not granting a new trial.

Judgment reversed.