## PEACOCK *et al. v.* HORNE, *et vice versa.*

1. Where several writings are relied on to establish a sale of land or of timber growing thereon, or to show authorization by the owner for another to sell the same, and parol evidence is necessary to connect and explain such writings, in order to constitute a contract of sale or to establish such authorization, such writings will not satisfy the statute of frauds.

2. When the intent is manifest that the contract is to be executed by others than those who actually signed it, it is inchoate and incomplete, and does not take effect as a valid and binding contract unless executed by all of such parties.

   (*a*) A party who signs and delivers an instrument is bound by the obligations it contains, although it was not executed by all the parties for whose signatures it was prepared, when there is nothing to indicate an intention on the part of him who signs that he is not to be bound thereby until it is signed by others, which intention is brought home to the obligee therein, where there is no express agreement or manifest intent to such effect, and where there is no loss of remedy by way of indemnity or contribution by the failure of other parties to execute the instrument.

3. Delivery is ordinarily an essential element to the execution of a written contract.

   (*a*) Delivery is complete when the contract, being ready for delivery, is handed or sent to the promisee with the intention at the time to pass the present title.

   (*b*) A mere manual transition of a paper to the obligee, without mutual intent to give validity to the paper, but with a mutual intent to the contrary, does not constitute delivery.

   (*c*) Where an instrument is prepared by a vendee or promisee to be signed by three parties, with a request that two of them sign it and then transmit it to the third party to be signed by him and returned to the vendee or promisee; and where such third party, on receiving such instrument, declines to sign the same, but instructs his clerk or secretary to return it to the vendee or promisee unsigned, which is done, these facts do not constitute a delivery of such instrument so as to pass title to the property intended to be conveyed thereby to such vendee or promisee.

4. Writings which on their face are not sufficient to operate as a deed or conveyance of land or growing timber, and to take the transaction out of the statute of frauds, may constitute an equitable estoppel.

   (*a*) An equitable estoppel often arises from silence, acts and conduct, when the same would not take the transaction out of the statute of frauds,

and would not amount to a conveyance of or agreement to convey lands or growing timber thereon.

(b) A contrary holding would make the statute of frauds, which is intended to prevent fraud as well as perjury, a cover for fraud.

(c) Before an equitable estoppel will arise, the party asserting it must have relied and acted upon the acts, conduct, or declarations of the party sought to be estopped, and not upon his own judgment, nor in reliance upon the future execution of some instrument by the party sought to be estopped, which would render resort to estoppel unnecessary.

(d) Conceding, but not deciding, that the letters and telegrams which passed between the plaintiffs, their agent who was conducting the negotiations for the sale of their lands, and the prospective purchasers thereof, touching the sale of the timber on these lands, might operate against the plaintiffs and in favor of the defendant who bought such timber from such prospective purchasers, if the buyer of the timber had relied and acted upon such letters and telegrams, these letters and telegrams would not operate as such estoppel where the prospective purchasers of the land and the defendant, not content to rely and act upon such writings, prepared a formal-writing to be signed by the plaintiffs to evidence their consent to the sale and their joinder in the conveyance of the timber to the defendant by the negotiating purchasers of the lands.

5. It is well settled that estoppel conveys no title. Its whole scope is to protect one from loss which, but for the estoppel, he could not escape, and should be limited to saving the party asserting the estoppel from loss.

Nos. 4137, 4168.   FEBRUARY 18, 1925.   REHEARING DENIED FEBRUARY 28, 1925.

Equitable petition.   Before Judge Custer.   Calhoun superior court.   December 3, 1923.

C. H. Peacock, A. P. Petway, and T. H. Edwards, alleging that they were the owners in fee simple as tenants in common of certain described land in Baker County, Georgia, filed a petition in the superior court of Calhoun County. seeking to enjoin J. L. Horne from cutting certain cross-tie timber on the land, which was known as the Beach Grove plantation, containing 5521 acres.   The petitioners alleged that the defendant entered upon said land and began to cut and carry away valuable timber growing thereon, and had carried away 2500 cross-ties; and that the only right or title claimed by the defendant to the said timber arose as follows:   The petitioners had some negotiations with one Reynolds with a view to selling him the plantation above .described.   The negotiations so far proceeded that a bond for title was actually prepared, but was retained by the plaintiffs until the payment of $16,000, a portion of the purchase-price.   Payment was never made, and the bond for

title was not delivered. Petitioners are informed and believe that Reynolds has left the United States and is now somewhere in Europe. He has never attempted to comply with the negotiations looking to the purchase of the property. On March 21, 1921, Reynolds, in conjunction with one Casey, who petitioners are informed has left for parts unknown, undertook to enter into a contract with the defendant, by the terms of which the defendant was authorized by Reynolds and Casey to enter upon the plantation and cut therefrom the timber. Reynolds and Casey had no authority to execute any such contract, and the same was null and void. After it was executed it was sent to T. H. Edwards, one of the petitioners, with the request that he consent to it and request the other petitioners to give their consent. Edwards did sign what purported to be a consent to the execution of the conveyance to the defendant, but his signature was affixed solely upon the condition that his cotenants would likewise consent thereto. Both Peacock and Petway refused to sign said consent, and have never affixed their signatures thereto, nor have they ever in any manner or form consented to the execution of said contract. Edwards' purported consent is not binding even upon him, because the express condition under which he signed it was not fulfilled, in that Peacock and Petway refused to join therein; because it was wholly without any consideration; and because the contract between Reynolds and Casey and the defendant was never signed or executed by the defendant, and therefore was unilateral and void under the statute of frauds.

The defendant admitted the petitioners' ownership of the land, but claimed the right to cut said timber, because the petitioners by letters and telegrams had authorized Reynolds and Casey to make with the defendant the contract under which he was cutting the cross-ties. He further pleaded that even if these letters and telegrams did not constitute formal and valid authority, they were sufficient to constitute a legal fraud upon defendant, and thereby the petitioners were estopped from claiming that said Reynolds and Casey had no authority to make said contract. He claimed the right to cut the timber under the written documents, the substantial parts of which are hereinafter given. All of these documents were attached as exhibits to the answer. By amendment the defendant set up: (1) that the rights conferred on him by said

writing, if all of said parties plaintiff were bound, would be of the value of $40,000; if Petway is not bound, they were of the value of $20,000; and if Edwards alone was bound, they were of the value of $10,000; (2) that at all times during the year 1921 plaintiffs were a partnership under the name of Petway, Edwards & Peacock, formed for the purpose of buying, selling, and dealing in lands, and said Beach Grove plantation had been bought by them, and at all times during said year was held and dealt with as one of its partnership transactions; and (3) the above facts are pleaded against Peacock and Edwards. By another amendment the defendant admitted (1) that plaintiffs, on January 1, 1921, owned the Beach Grove plantation and the timber thereon, but pleaded that plaintiffs, by reason of the facts embraced in this statement, are estopped from claiming said timber as against him; and (2) the defendant assumed the burden of proof and claimed the right to open and conclude. He further set up that he had cut and intended to cut said timber as alleged, and that said cutting would constitute a continuing trespass unless he succeeded in establishing all or some of the defenses set. up by him.

To this answer the plaintiffs demurred on the ground that it set forth no defense to the action and consisted of mere conclusions of law unsupported by the documents relied on in the answer. They specially demurred to paragraph 2 of the amendment to the answer, on the grounds: (a) that the averment that plaintiffs have, by their acts and conduct and by their representations to defendant, misled and caused him to accept the deed from Reynolds and Casey is a mere conclusion of the pleader; (b) that the averment that plaintiffs are liable to defendant for the difference in value of the rights which would have been conferred on him by said deed if all of said plaintiffs were bound thereby, and the value of the rights conferred on him by said deed with only part of the plaintiffs bound, is a mere conclusion of the pleader unsupported by the facts; and (c) that the allegation that plaintiffs have damaged the defendant in the sum of $20,000 is a mere conclusion of the pleader. Plaintiffs specially demurred to all of said paragraph 2 which undertakes to set up a cross-action of damages against them, on the grounds, that it appears therefrom that they are residents of Dodge County, for which reason the superior court of Calhoun County has no jurisdiction of said cross-action; and that the sub-

ject-matter of said answer in the nature of a cross-bill did not grow out of the original suit and is not germane thereto. Plaintiffs specially demurred to paragraph 3 of the answer, in which it was sought to have partition of said timber, on the grounds: (a) that the land involved is in Baker County, and two of plaintiffs reside in Dodge County, for which reason the superior court of Calhoun County is without jurisdiction to partition said timber; (b) that said court has no jurisdiction to decree partition of timber; and (c) because the court is without jurisdiction to entertain the cross-bill, because the subject-matter thereof did not grow out of the original bill and is not germane thereto.

The court sustained subparagraphs (b) and (c) of ground (2) and the whole of grounds (3) and (4) of the demurrer to the answer as finally amended, and overruled the other grounds of the demurrer. To this judgment the plaintiffs excepted pendente lite, and assigned error thereon in this court.

At the trial the defendant, having assumed the burden of proof, introduced the following evidence: He testified that he purchased the timber in controversy for cross-ties, under the contract of March 21, 1921, from James S. Reynolds and H. E. Casey to himself, the material parts of which, with the memorandum at the bottom thereof signed by C. H. Peacock and T. H. Edwards, are hereafter set out in the ground of the motion for new trial complaining of their admission. The consideration mentioned in said contract was not paid before the contract was tendered to him as it is. Before he entered into the contract certain letters and telegrams were shown to him (being those mentioned in the motion for new trial). These letters and telegrams influenced him in entering into said agreement and paying the consideration of $250. He concluded Reynolds and Casey had a perfect right to sell the timber, and acted in good faith when he paid said consideration. He went ahead and bought two wagons and two mules in preparation to cut the timber. The whole outfit amounted to $1143. He began cutting on April 2, and was proceeding under this contract when stopped by the injunction. He had cut between 1500 and 2000 cross-ties at 6 cents per tie, stumpage basis. He has one pair of the mules and wagon, sold the other pair at a sacrifice, and sold one of the wagons. He introduced also the letters and telegrams set out in the several grounds of the motion for new trial, and the

contract of purchase. Counsel for the defendant admitted in open court that Petway was not present and had nothing to do with the signing of the two telegrams, one of which was signed "Petway & Edwards & Peacock," and the other "Petway, Edwards and Peacock," both being sent to J. S. Reynolds, Albany, Ga., one dated March 21, 1921, and the other March 22, 1921. The defendant introduced evidence tending to show that the signature of Peacock to the memorandum of the contract of sale was genuine.

For the plaintiffs A. P. Petway testified: My home is in Goldsboro, N. C. I met the defendant some time in April or May, 1921, just a day or two after we found he was cutting the timber. The first information I got that Horne was claiming the right to cut any timber on Beechgrove plantation was, I think, in May, 1921. The letter dated March 19, 1921, addressed to T. M. Ticknor, Albany, Ga., signed by J. S. Reynolds and H. E. Casey, was in my possession until the injunction hearing some time after May 18. I got that letter through the regular course of mail from Mr. Ticknor in Goldsboro, N. C., on March 21, 1921. It was continuously in my possession from March 21 to June 15. When I got this letter from Ticknor, I sent the telegram to him, dated Goldsboro, N. C., March 21, signed by me, stating: "We have wired Peacock and Edwards, requesting them to wire you authority to Reynolds to proceed as per his letter. If necessary you can call Mr. Peacock over the 'phone." When Ticknor sent me this letter from Reynolds and Casey he wrote me a letter himself. The reference in my telegram to Ticknor to authority for Reynolds to proceed as per his letter referred to the letter of March 19. At the time I sent the telegram to Ticknor I did not know or have any reason to believe that either Reynolds or Casey or both of them contemplated any contract for the sale of this timber with the defendant Horne. It was about March 26 when I first heard that Reynolds and Casey had undertaken to sell the cross-tie timber to Horne at 6 cents a cross-tie. I did not approve of the attempt of Peacock and Edwards to sell the same, and I left in a day or two for Jacksonville, Fla., after seeing and talking with Peacock and Edwards at Eastman, Ga., on March 25, and before leaving I dictated a letter to Reynolds, and when I got to Jacksonville I called Reynolds over the 'phone. At the request of Reynolds, I wired my secretary, T. H. Prince, at Goldsboro. I wired Prince to open my mail and find the

contract between Reynolds and Casey and Horne and to mail it by registered mail, unsigned, to Reynolds at Albany, which Prince did. Reynolds said he would like to have the original paper, but did not say for what reason. I knew nothing of the telegrams dated March 21 and March 22 respectively, at the time they were sent, and did not authorize them to be sent. I never did communicate with Reynolds and Casey in any way my willingness for them to execute this contract. There is no partnership between us, and we are not jointly in business of any kind and never have been since we purchased this place. The letter dated January 26, 1921, signed J. S. Reynolds, and addressed to Messrs. C. H. Peacock, T. H. Edwards, and A. P. Petway was the basis on which we were negotiating with Reynolds. In pursuance of this original proposition a bond for title was prepared by all three of us, but it was never delivered. It was to be delivered on payment of $16,000. Ever since its execution it has been in the possession of Peacock. It recites Reynolds was to pay $16,000 in cash on the purchase-price. He never paid it. On its payment we were to give him possession. He never did go into possession. I never did get a penny of the money Horne claims to have paid Reynolds and Casey for the purchase-price of this timber. I wired Peacock and Edwards authorizing the cutting of timber, but not its sale. The reference here to Reynolds' contract was his contract to pay the $16,000, on the payment of which he was to be permitted to begin removing the timber. The telegram was sent Prince on the 28th or 29th of March, 1921.

T. H. Edwards testified: Peacock, Petway, and Edwards are not now, and never have been, a partnership. We bought only one piece of property together—the Beechgrove plantation. I never heard of the defendant until we found him cutting this timber. I first heard of him through a telegram from Mr. Petway two days before the injunction suit was filed, I think. On getting this information I and Peacock went to the plantation to see Tyson and Horne. We went to the mill, and Tyson or one of these gentlemen showed us the contract with Reynolds and Casey. Peacock stated positively at once that he never signed it. The paper was in my possession once before, and that is my signature to it. I think I signed about March 22 at Eastman. Peacock lives at Eastman. He did not sign at that time, because he was not in town. I think

he returned to Eastman on the 22d. I discussed signing the contract with him. He told me he would not sign it. He refused to sign it. I mailed it to Macon, thinking Peacock would get it there and save time. It was returned to Peacock from Macon. I did not have it in my possession any more. Peacock mailed it to Petway. I did not authorize Prince or Petway or anybody else to deliver this contract to Reynolds with my signature attached to it. My name appears on the second line at the bottom. At the time I signed there was no other signature there. I understood that those other blank lines were for the signatures of Peacock and Petway. When I signed I thought they would sign also. I had no idea of delivering my part unless the other two signed it. It was about the first of April, 1921, when I first found out that Petway had returned this contract to Reynolds with my signature on it. The first time I knew that Horne or Reynolds or any of them had this paper with my signature on it was when I went to Tyson's mill about a day before the injunction was filed, and they exhibited the paper with my signature on it. The signature, "C. H. Peacock," on the line above my signature, looks like his signature, but I do not believe that it is genuine. I consented to sending the telegram signed Petway, Edwards and Peacock, but I did not sign it. We signed that way because we owned the piece of property together. We were selling it as Petway, Edwards & Peacock—that is the way we did business. We ran a farm out that way. Each fellow bore his part: Petway one half, Peacock one fourth, and I one fourth Had we made any profits they would have been divided in the same ratio. Peacock mailed this contract to Petway in Carolina. I thought Reynolds then was going to act in good faith with us, pay us the $16,000, and that the trade would go through. I had faith in him at that time. I have not a bit in him now, and think he is a scoundrel.

Plaintiffs introduced a letter from T. M. Ticknor to Petway, dated March 19, 1921, the material parts of which are as follows: "We attach hereto a note just received from Messers. J. S. Reynolds and H. E. Casey. This letter explains itself, but we wish to add that their object in having the authority to begin operation is not to make a profit on the timber, but to take advantage of the opportunity to begin clearing up the land, as they have plans about perfected by which they will begin a large pecan development, and

one of the first steps will be to have the land cleared. They state that it will be at least two or three weeks before this cutting can begin, and they confidently expect to pay you entire purchase-price for the place in that time. These gentlemen want a wire from you not later than Monday next, which will be their authority for closing this contract. The contract can be cancelled by them at any time by not [?] by the parties who expect to do the cutting. They have reserved this right so that, if by any possibility the trade for the place should fall through, the cutting operations will cease at once. They assure us positively that there is no danger whatever of their not carrying out their original contract with you, purchasing this place. We are so thoroughly satisfied that their plans are well developed and will go through that we recommend your granting this privilege, and we hope you will telephone or wire Peacock & Edwards at Eastman, to whom we are sending a copy of this entire correspondence, and have one of them telegraph Monday, sure, your decision, as a meeting has been called by these parties to discuss and close up this matter."

C. H. Peacock testified for plaintiffs that his signature on the contract of sale was not his genuine signature; that the first time he saw the paper with the signature purporting to be his was when he went to Horne and Tyson's mill a day or two before filing the injunction suit; that he had never had any knowledge prior to that time that Horne had such paper with his signature; that his recollection was that the paper came through the mail at Macon, and was returned to him when he got home at Eastman; that he never saw the paper; his recollection was he mailed it to Petway; that Edwards told him the contents; that he never read it; that he never signed it and did not authorize anybody to sign it for him; that he never authorized anybody to deliver it to Reynolds or Casey or Horne with or without his signature attached; that there had never been any partnership between Petway, Edwards, and himself; that they owned some land in Baker County; that his recollection was that Edwards and he sent the telegram of March 21 to Reynolds, reading, "We authorize you to proceed as per your letter," and signed "Petway and Edwards and Peacock;" and that Petway sent the letter from Reynolds to Ticknor, or Ticknor sent a copy.

T. H. Prince testified for plaintiffs: I was associated with Petway in business in Goldsboro, N. C., in March, 1921. The lease

contract handed me, dated March 21, 1921, between Reynolds and Casey of the one part and Horne of the other, looks very much like the one I saw at Goldsboro. Petway wired me from Florida to open a letter of his and return the lease contract to Reynolds at · Albany, unsigned. I saw the signature of T. H. Edwards on the paper. I did not see the signature of C. H. Peacock on it. It was not there at that time. I returned the lease to Reynolds. I did not erase the signature of Edwards.—It was admitted by the defendant that the plaintiffs had title to the Beechgrove plantation.

H. H. Radford testified for plaintiffs: Had a conversation with defendant at the Beechgrove plantation in March, 1921. The defendant said he bought the timber from Reynolds; that Edwards had signed the paper and he expected to get the others to sign it. He did not make any improvements on the place. He hauled the ties he cut to the Central Railroad at Leary. I don't think there was much difference in the value of the mules before and after the injunction suit was filed. Horne had been at work six or seven weeks before he was stopped by the injunction.—Horne, in rebuttal, testified that he did not tell Radford that only one signature was on the lease and that he expected to get the others to sign it.

J. M. Ticknor testified for plaintiffs: In 1921 I was a dealer in real estate. I negotiated a transaction between Peacock, Petway & Edwards and James S. Reynolds in reference to the sale of the Beechgrove plantation in Baker County. The letter handed me, · dated March 19, 1921, addressed to me, signed by James S. Reynolds and H. E. Casey, was received by me. I forwarded the letter to Petway at Goldsboro, I think. I wrote and mailed to Mr. Petway the other letter handed me, dated March 19, 1921, and signed by me. To the best of my knowledge and belief I wrote and mailed it March 19, the date it bears. The reference in my letter to Petway to a note just received from Reynolds and Casey was to this letter of March 19, 1921, addressed to me and signed by J. S. Reynolds and H. E. Casey. I think it takes about a couple of days for a letter to go from Albany, Ga., to Goldsboro, N. C. ·

The jury returned a verdict in favor of the defendant, and upon this verdict a decree was rendered declaring the deed of the defendant to be valid, and further that the petitioners were estopped to set up any rights contrary to the terms of said deed. The petitioners filed a motion for a new trial upon the general grounds, and by

amendment added nine special grounds. The first special ground complains that the court erred in admitting in evidence a letter dated March 19, 1921, addressed to T. M. Ticknor, Albany, Georgia, signed by James S. Reynolds and H. E. Casey, the material parts of which were as follows: "Re Beach Grove Plantation. As you are well aware, it is our desire to clear up the timber on the above plantation as early as possible, this being the first step toward development. In this connection we will be glad if you will seek on our behalf the consent of Mr. Petway and his associates to our making arrangements for the cutting of some of the timber. We have, at the present time, the opportunity of making such arrangements on a stumpage basis, and would like to close such contract on Monday next the 21st. . The price we are able to obtain for the lumber is considerably less than the $5 per thousand feet we have agreed to pay Mr. Petway against our note for the removal of such lumber; and we will of course, pending payment in full for the estate, pay Mr. Petway this stumpage as per our agreement with him ($5 per thousand feet). You already know how our plans for making payment in full are progressing, and it is almost certain that settlement will be made for the whole estate before a single tree can be cut. We will be extremely obliged if you will make these facts clear to Mr. Petway, and have him wire you his consent on Monday certain." The objections urged against the admission of this letter were, that the language thereof was too uncertain and indefinite to be the basis of either a contract or of estoppel as claimed by the defendant; and that the letter is addressed to one Ticknor, who was not shown to have any connection with the plaintiffs in the case.

The second special ground complains that the court erred in admitting in evidence the following telegram, dated March 21, 1921, addressed to J. S. Reynolds and signed "Petway & Edwards & Peacock": "We authorize you to proceed as per your letter," over the objection that the same was too uncertain and indefinite to form the basis of a contract or of an estoppel, either when considered alone or in connection with the other documents. The third ground insists that the court erred in admitting in evidence a telegram dated Goldsboro, N. C., March 21, 1921, addressed to T. M. Ticknor, Albany, Georgia, signed by A. P. Petway, as follows: "We have wired Peacock and Edwards requesting them

to wire you authority for Reynolds to proceed as per his letter. If necessary you can call Mr. Peacock over the 'phone." The objection urged was the same as stated in the preceding ground. The fourth ground complains of the admission in evidence of a telegram dated March 22, 1921, addressed to Jas. S. Reynolds, Albany, Georgia, signed "Petway, Edwards & Peacock," as follows: "Our partnership gives permission for you to cut timber as per suggestion in your letter," the objections urged being the same as those set forth in the preceding grounds. In the fifth ground it is insisted that the court erred in admitting in evidence a letter signed "Jas. S. Reynolds" and addressed to C. H. Peacock and T. H. Edwards, dated March 21, 1921, as follows: "Herewith we enclose contracts entered into to-day for the cutting of timber on the Beachgrove plantation. We desire, in accordance with your telegram of today, that you will endorse these contracts and forward as soon as possible to Mr. Petway with the request that he also endorse and return direct to us at earliest possible moment. We are very much gratified at your prompt response to our request over the week end, and thank you very much for same. Assuring you that pending complete settlement for the plantation you will be kept advised of all cutting operations, we beg to remain," etc. The objections urged were the same as those above set forth.

The sixth ground complains of the admission in evidence of the purported lease contract, dated March 21, 1921, from Reynolds and Casey to J. L. Horne, the material parts of said lease being, that, in consideration of the sum of $250 in hand paid, the parties of the first part "have this day sold the party of the second part all cross-tie timber located on what is known as the Beachgrove plantation in Baker County, Ga., said property being the property purchased by the party of the first part from Petway, Peacock & Edwards; the timber conveyed being all the timber that measures 18 inches or less in diameter 2 feet from the ground. The purchase-price of said timber is 6 c. for each cross-tie cut by said party of the second part, . . and said cross-ties to be paid for as they are removed from the plantation and placed on the right of way of the Central of Georgia Railway Company." Horne was allowed two years in which to cut the timber, and was required to cut all the timber within the measurements, and was forbidden to cut in picked spots. Title to the timber was warranted by Reynolds and Casey. The contract

was under seal and signed by the parties of the first part before two witnesses, one of whom was a notary public. At the bottom of the contract there appeared the following: "We, the undersigned, hereby and by these presents consent and join in the above conveyance.

..........................　　　C. H. Peacock (L. S.

..........................　　　T. H. Edwards (L. S.)

N. P.　　　　　Co., Ga.　　.................(L. S.)"

The objections urged to the admission of this lease were: (1) That the execution of the writing on the part of C. H. Peacock had not been proved. (2) That the document tendered as a·contract was unilateral, not having been signed by the defendant, and there being no promise on his part to take and pay for the timber. (3) That no authority had been shown on the part of Reynolds and Casey to execute the alleged contract or bind the plaintiffs by the execution thereof. It is stated that "The court overruled said objections on condition that defendant submit evidence as to the signing of said paper by C. H. Peacock."

The seventh ground complains that the court·charged the jury that "You are not concerned with the issue made by these pleadings, except so far as the same pertain to the question of authorization alleged by the defendant in this case of J. S. Reynolds and H. E. Casey to execute a certain lease to timber to Mr. Horne. That is the sole issue that is being submitted to you by the court, and you will [direct your] whole inquiry to the truth of that issue." It is insisted that this charge was error, because under the evidence the court should not have submitted to the jury any issue as to the authority of Reynolds and Casey to execute the lease in question, because the evidence demanded a finding that no such authority existed. The eighth ground of the amended motion assigns error upon the following charge: "The defendant claims and contends that he entered into an agreement with J. S. Reynolds and H. E. Casey, wherein, for a consideration of $250 paid by him to J. S. Reynolds and H. E. Casey, they conveyed him the timber in question at a certain price. He claims and contends that he was induced to purchase the timber by reason of having had exhibited to him certain telegrams and letters that passed between J. S. Reynolds and the plaintiffs in the case, which led him to believe that Reynolds was authorized to sell the timber described; and that by

reason of the declarations as set forth in said telegrams and letters on the part of the plaintiffs they are estopped from interfering with the cutting of said timber on the part of the defendant. This, gentlemen, raises the issue which you are to pass upon in this case, and is what is known to the law as an estoppel." Movant contends that under the evidence introduced the court erred in charging the jury upon the law of estoppel, and in submitting to the jury any issue in reference to estoppel of the plaintiffs or any of them to call in question the validity of the alleged contract; and further contends that as a matter of law the evidence was not sufficient to create an estoppel or to raise any issue of this nature, but the evidence demanded a finding that the defendant had no right to cut the timber, and a finding that the plaintiffs were not estopped to attack his title. In the ninth ground the movant contends that the court erred in charging the jury as follows: "You may look to the circumstances under which the letters and telegrams were written, and you must find from the evidence that the defendant saw all of them—saw all of them at one and at the same time, or in such time so closely connected as to lead him to the conclusion for which he contends in this case. Then see whether in point of time this occurred before the acceptance of the contract by him; then determine whether Mr. Horne was deceived into believing that Reynolds and Casey had authority to deed the timber." It is insisted that the court erred in submitting to the jury any question as to whether the lease and telegrams deceived the defendant, there being no evidence to authorize a finding that the defendant had any lawful right to cut the timber, or that the plaintiffs were for any reason estopped from attacking the defendant's alleged title.

The judge overruled the motion for a new trial and the plaintiffs excepted. In a cross-bill of exceptions the defendant assigns error upon the judgment sustaining portions of the plaintiffs' demurrer to the amendment to the defendant's answer.

*Benton Odom* and *Pottle & Hofmayer,* for plaintiffs.

*Pope & Bennet* and *Milner & Farkas,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. The defendant claims title to the timber in dispute and the right to cut the same under the letters, telegrams, and contract of sale, the pertinent portions of which are embraced in the statement of facts. One of his contentions is that plaintiffs had authorized

J. S. Reynolds and H. E. Casey to make with the defendant the contract of sale. We will first address our attention to this contention. These letters and telegrams, standing alone, did not authorize Reynolds and Casey to sell this timber. "Any contract for the sale of lands, or any interest in, or concerning them," must be in writing in order to bind the promisor. Civil Code (1910), § 3222(4). Timber growing upon land is a part of the land, as the trees were not to be immediately severed from the soil and carried away. *Balkcom* v. *Empire Lumber Co.,* 91 *Ga.* 651 (17 S. E. 1020, 44 Am. St. R. 58); *Pritchett* v. *Davis,* 101 *Ga.* 236 (28 S. E. 666, 65 Am. St. R. 298); *Corbin* v. *Durden,* 126 *Ga.* 429 (55 S. E. 30); *Baucom* v. *Pioneer Land Co.,* 148 *Ga.* 633 (97 S. E. 671). This being so, the contract of sale must be in writing, under the statute of frauds. Where several writings are relied on to evidence the sale of land or of standing timber thereon which is a part of the land, and parol evidence is necessary to connect and explain such writings in order to constitute the contract of sale, such writings will not satisfy the statute of frauds. They can not be correlated and connected by parol evidence. *Smith* v. *Jones,* 66 *Ga.* 338 (42 Am. R. 72); *North* v. *Mendel,* 73 *Ga.* 400 (54 Am. R. 879); *Lester* v. *Heidt,* 86 *Ga.* 226 (12 S. E. 214, 12 L. R. A. 108); *Turner* v. *Lorillard Co.,* 100 *Ga.* 645 (28 S. E. 383, 62 Am. St. R. 345); *Timmons* v. *Bostwick,* 141 *Ga.* 713 (82 S. E. 29). The telegram of "Petway, Edwards & Peacock" to J. S. Reynolds, dated March 21, 1921, makes no reference to the letter of James S. Reynolds and H. E. Casey to T. M. Ticknor, dated March 19, 1921. This telegram does refer to a letter from Reynolds to the senders of the telegram; but parol evidence would be necessary to connect any such letter with this telegram. The same is true of the telegram from Petway to Ticknor, dated Goldsboro, N. C., March 21, 1921. This telegram refers to a letter of Reynolds, without giving its date, or stating its subject-matter; and parol evidence would be necessary to connect this letter with the cutting of this timber, and to show to what Reynolds it refers. The letter from J. S. Reynolds to C. H. Peacock and T. H. Edwards, dated March 21, 1921, recited that Reynolds was enclosing contracts entered into that day for the cutting of timber on Beechgrove plantation. He requested the addressees to endorse those contracts and forward as soon as possible to Petway with request that he also endorse and return them

directly to the writer at the earliest possible moment. Parol evidence would be necessary to connect the contracts therein referred to with the one made between Reynolds and Casey of the one part, and the defendant of the other part, for the sale of this timber. Parol evidence would be necessary to show what contracts were enclosed, and between whom they were made. The telegram from Petway, Edwards and Peacock to Reynolds, dated March 22, 1921, recited that the senders gave permission for Reynolds to cut timber as per suggestion in some letter from him. Parol evidence would be necessary to show what timber and what letter were referred to, and on what terms the permission was given. So we are of the opinion that these telegrams and letters do not take this transaction out of the statute of frauds. To connect them up and make a complete contract, it would be necessary to introduce parol evidence in the respects above stated. In these circumstances these writings are insufficient, under the statute of frauds, to constitute an authorization by the plaintiffs to Reynolds and Casey to sell this timber; nor are they sufficient, under that statute, to constitute a sale of this timber to the defendant who purchased the same from Reynolds and Casey. The question whether, if Reynolds and Casey had sold this timber to the defendant in the name of the plaintiffs and as their agents, these writings would confer on Reynolds and Casey authority to make the sale of the timber to the defendant, is not now for decision by this court.

2. Do the telegrams, letters, and partially executed contract of sale, combined, constitute a sale of this timber to the defendant? Edwards, one of the plaintiffs, unquestionably and admittedly signed this contract. The jury was authorized to find, although the evidence on this subject was conflicting, that Peacock, another of the plaintiffs, signed this instrument. Petway, the other plaintiff, did not sign, but declined to sign it. Under these circumstances this document did not convey the right and title of Petway in and to this timber. Did this writing sell and convey the undivided interests of Edwards and Peacock in the same? It is manifest that it was the intention of the parties that it was to be signed by all of the plaintiffs. This intention is evidenced by the fact that it was the purpose of the instrument to convey the joint interests of the plaintiffs in this timber. The instrument was so prepared as to effectuate this intention. By its form it was to be

signed by the three plaintiffs. Three lines were prepared, one for the signature of each of them. In his letter of March 21, 1921, in which he transmitted this contract to Peacock and Edwards, Reynolds requested them to sign this instrument, and then to forward the same as soon as possible to Petway for his signature. It is thus shown that the instrument was not to be a complete and effectual agreement until signed by all of the plaintiffs. When the intent is manifest that the contract is to be executed by others than those who actually sign it, it is inchoate and incomplete, and does not take effect as a valid and binding contract. 13 C. J. 305, § 128; *Clarke* v. *McNatt,* 132 *Ga.* 610 (1*a*) (64 S. E. 795, 26 L. R. A. (N. S.) 585); Mattoon v. Barnes, 112 Mass. 463; Graham v. Caperton, 176 Ala. 116 (57 So. 741); Bruch v. Shafer, 235 Pa. 590 (84 Atl. 515); Russell v. Annable, 109 Mass. 72 (12 Am. R. 665). This case does not come within that class of cases wherein it is held that a party who signs and delivers an instrument is bound by the obligations it contains, although it is not executed by all the parties for whose signatures it was prepared, where there is nothing to indicate an intention on the part of him who signs not to be bound thereby until it is signed by others, which intention is brought home to the obligee therein, and where there is no express agreement or manifest intent to such effect, and where there is no loss of remedy by way of indemnity or contribution, by failure of other parties to execute the instrument. Naylor v. Stene, 96 Minn. 57 (104 N. W. 685). So we are of the opinion that it was the manifest intention of the parties to this contract that it was to be signed by all of the plaintiffs before it became binding on the two who signed it; and on the failure and refusal of one of the plaintiffs to sign it, it was not binding on those who did execute it.

3. Furthermore we are of the opinion that there was no sufficient delivery of this instrument, so far as the plaintiffs are concerned. Treated as a conveyance of this timber, it must have been delivered to the purchaser. Civil Code (1910), § 4179. Delivery is ordinarily an essential element of the execution of a written contract. *Denton* v. *Butler,* 7 *Ga. App.* 267 (66 S. E. 810); 13 C. J. 307, § 131. Whatever will be a sufficient delivery of a deed for the conveyance of land will be a sufficient delivery of an executory contract for the benefit of the party to whom delivery is to be made. Hockett v. Jones, 70 Ind. 227. The delivery is complete when the

contract, being ready for delivery, is handed or sent to the promisee with the intention at the time to pass the present title. Haven v. Chicago Sash &c. Co., 96 Ill. App. 92. The mere manual transition of such a paper is one thing; delivery of the instrument as an element of a contractual obligation is a different thing. The former without mutual intent to give validity to the paper, but a mutual intent to the contrary, does not constitute delivery. Carpenter v. Carpenter, 141 Wis. 544, 124 N. W. 488. Delivery is a matter of intention to be gathered from all the facts. *Baxter* v. *Chapman*, 147 *Ga.* 438 (94 S. E. 544) ; *Willingham* v. *Smith*, 151 *Ga.* 102 (106 S. E. 117). So where Reynolds sent this contract to Peacock and Edwards, with the request that they sign it, and then forward it to Petway to be signed by him, and Petway refused to sign it, and directed that it be sent back to Reynolds, unsigned by him, and with no intention to deliver the instrument as a completed and binding contract, such transmission of the paper did not constitute its delivery by the parties who so signed it. This being so, this contract conveyed no title to or interest in this timber to the defendant.

4. The contention most strongly stressed by the defendant is that the plaintiffs, as against him, are estopped to deny his right to cut the timber in dispute. He contends that the plaintiffs by their acts and conduct, as reflected in the telegrams, letters, and contract of sale, the substantial parts of which are set out in the statement of facts, authorized Reynolds and Casey to sell this timber to him, in pursuance of which he made an initial payment on this purchase-money of $250, and expended the sum of $1143 in the purchase of an outfit for cutting the timber and converting it into cross-ties; and that by reason of this situation the plaintiffs are estopped from asserting title as against him to the timber, and from undertaking to enjoin him from cutting the same. The trial judge took this view of the case, and declined to enjoin the defendant from cutting the timber. At the outset we can not agree with the position of counsel for the plaintiffs that writings which, on their face, are not sufficient to operate as a deed and to take the transaction out of the statute of frauds can not amount to an estoppel. This position is not sound. Equitable estoppel or estoppel in pais often arises from silence, acts and conduct, when the same would not take the transaction out of the statute of frauds

and would not amount to a conveyance of or agreement to convey lands or some interest therein. So where one silently stands by and permits another to buy his property without disclosing his title, he is guilty of such fraud as estops him from afterwards setting up such title against the purchaser. Civil Code (1910), § 4419. So where one attests a deed, knowing its contents, and afterwards stands by and sees work done under it on the premises, without objection, he is estopped from afterwards asserting an older adverse title in himself. *Georgia &c. R. Co.* v. *Strickland,* 80 *Ga.* 776 (2) (6 S. E. 27, 12 Am. St. R. 282) ; *Equitable L. & S. Co.* v. *Lewman,* 124 *Ga.* 190 (52 S. E. 599, 3 L. R. A. (N. S.) 879). So although a deed under seal conveying land, executed in the name of the ostensible makers, but not in their presence, by a person authorized by them verbally, is invalid under the statute of frauds, yet, as against persons who have acted upon it in a way to be prejudiced should the authority to make it be repudiated, the ostensible makers will be estopped from denying the authority of the person who with their consent subscribed their names to the instrument. *McCalla* v. *American Freehold &c. Co.,* 90 *Ga.* 113 (15 S. E. 687). So where one, as agent for another, signs a deed conveying property, he will be estopped from thereafter asserting against the grantee any adverse right based on a title or interest outstanding in such agent at the time of the execution of such conveyance. *American Freehold &c. Co.* v. *Walker,* 119 *Ga.* 341 (46 S. E. 426). These authorities and many more which could be cited demonstrate that writings which themselves are not sufficient to operate as a conveyance or to take the transaction without the pale of the statute of frauds, may operate to estop a party from asserting title to or an interest in lands. A contrary holding would make the statute of frauds, which is intended to prevent frauds as well as perjuries, a cover for frauds. *Robson* v. *Harwell,* 6 *Ga.* 589 ; *Cameron* v. *Ward,* 8 *Ga.* 245 ; *Jenkins* v. *Lane,* 154 *Ga.* 454, 476 (115 S. E. 126).

This brings us to consider the question whether the plaintiffs are estopped by their acts and conduct from asserting their title to this timber against the defendant. Before an equitable estoppel will arise, the party asserting it must have relied and acted upon the acts or declarations of the party sought to be estopped, and not upon his own judgment or upon any reliance upon some future act to be done or future execution of some instrument by the party

sought to be estopped. *Goodson* v. *Beachman,* 24 *Ga.* 150; *McCune* v. *McMichael,* 29 *Ga.* 312; *Stewart* v. *Brown,* 102 *Ga.* 836 (30 S. E. 264); *Brice* v. *Sheffield,* 121 *Ga.* 216 (48 S. E. 925). 21 C. J. 1126, § 130. Construing the evidence most favorably to the defendant, it appears that the plaintiffs were willing for Reynolds and Casey to sell this timber. On March 19, 1921, James S. Reynolds and H. E. Casey wrote to T. M. Ticknor, a real-estate agent at Albany, Ga., who was handling the sale of the Beechgrove plantation for the plaintiffs, and requested Ticknor to seek on their behalf the consent of the plaintiffs to their making arrangements for the cutting of some of the timber, stating that they had an opportunity to make such arrangements on a stumpage basis and would like to close such contract on March 21, 1921. On the same day Ticknor forwarded said letter to Petway at Goldsboro, N. C. On March 21, 1921, Petway telegraphed Ticknor that he had wired Peacock and Edwards, requesting them to wire him authority for Reynolds to proceed as per his letter. On March 21, 1921, a telegram signed by "Petway & Edwards & Peacock" was sent to Reynolds, stating: "We authorize you to proceed as per your letter." On March 21, 1921, the formal contract of sale of this timber by Reynolds and Casey to the defendant was prepared and executed by Reynolds and Casey. A memorandum followed their signatures, evidencing the consent of plaintiffs thereto and their joinder therein, which was to be signed by all the plaintiffs. On March 21, 1921, Reynolds wrote a letter to Peacock and Edwards, enclosing this contract and memorandum, and requesting Peacock and Edwards to sign this memorandum and forward the same to Petway for his signature. Edwards signed said memorandum. Whether Peacock signed the same is in dispute, Peacock denying his signature thereto. The contract and memorandum were then sent to Petway at Goldsboro, to be signed by him and then forwarded to Reynolds. On March 22, 1921, a telegram from Eastman, Ga., signed by "Petway, Edwards and Peacock," was sent to Reynolds at Albany, as follows: "Our partnership gives permission to you to cut timber as per suggestion in your letter." It was admitted that Petway had nothing to do with the sending of the above two telegrams. The defendant testified that he purchased the timber for cross-ties under the contract of March 21, 1921, from Reynolds and Casey to himself; that the consideration

mentioned therein was not paid before the contract was tendered to him as it is; that the letters and telegrams were shown to him before he entered into said contract; and that they influenced him in entering into said agreement and paying the consideration of $250. It thus appears that the defendant did not purchase this timber relying upon the above telegrams alone. He testified that the letters, telegrams, and contract were shown him before he paid the consideration of $250; and that the contract was in its present shape when presented to him. He was thus put upon notice that the contract had not been signed by Petway and that its execution was incomplete. He was thus fully advised that Petway had not signed the contract after being requested so to do and to return same to Reynolds. He did not under these circumstances rely upon the fact that all the plaintiffs had authorized Reynolds and Casey to sell this timber to him. The failure of Petway to sign the contract was sufficient to put him on inquiry as to why Petway had not done so. He was therefore put upon further notice that all the plaintiffs were to sign this contract before it became a complete and binding agreement. In these circumstances a finding was demanded that he did not rely upon the fact that the plaintiffs had authorized Reynolds and Casey to sell this timber and that they were consenting to the sale and joining in the conveyance. So we are of the opinion that no equitable estoppel arose in favor of the defendant against the plaintiffs, under the facts of this case.

5. But conceding that the plaintiffs were estopped from asserting their title to this timber, to what extent would the estoppel go? Would the defendant be entitled to cut all the timber and reap all the gains of the enterprise? It is well settled that estoppel conveys no title. *Sheppard* v. *Reese*, 114 *Ga.* 411 (40 S. E. 282); *Bussey* v. *Bussey*, 157 *Ga.* 648 (121 S. E. 821). An equitable estoppel rests upon good conscience. It will not be extended further than justice to the rights of others demands. Its whole scope is to protect one from a loss which, but for the estoppel, he could not escape. Estoppel is not intended to work gain to the party asserting it. It should be limited to what is necessary to put the parties in the same relative position which they would have occupied if the facts upon which the estoppel rests had not occurred. *Lindsay* v. *Cooper*, 94 Ala. 170 (11 So. 325, 16 L. R. A. 813, 33 Am. St. R. 105); *Phillipsburgh Bank* v. *Fulmer*, 31 N. J. L. 52 (86 Am. D. 193);

Gjerstadengen *v.* Hartzell, 9 N. D. 268 (83 N. W. 230, 81 Am. St. R. 575); 10 R. C. L. 697, § 25. In the instant case the money paid by the defendant with interest, and any damages sustained by him growing out of necessary and reasonable expenditures which were made in pursuance of the purchase of this timber in order to manufacture the same into cross-ties, and which would become a loss to the defendant if he were not permitted to use this timber, would be the extent to which the estoppel should extend, if a case of estoppel had been made out; but, as we have undertaken to show above, no such case was made out.

6. Applying the above principles, the court below erred in not sustaining the plaintiffs' demurrer to the defendant's answer in the respect complained of by the plaintiffs, and in not granting a new trial upon the grounds that the court erred in giving to the jury the instructions embraced in the eighth and ninth grounds of the motion for new trial, and because the verdict was contrary to the law and evidence. This renders it unnecessary to consider other assignments of error.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*