23611. NATIONAL BEN FRANKLIN FIRE INSURANCE
COMPANY *v.* HURLEY *et al.*

DECIDED SEPTEMBER 20, 1934. REHEARING DENIED SEPTEMBER 29, 1934.

*Smith, Smith & Bloodworth, Earle Norman,* for plaintiff in error.
*W. A. Slaton,* contra.

SUTTON, J. This is the second appearance of this case in this court. *Hurley* v. *National Ben Franklin Fire Ins. Co.,* 46 *Ga. App.* 515 (167 S. E. 917). For a statement of the facts see the report of the case when it was here before. On the second trial of the case the evidence authorized a finding that the security deed executed by the wife of John Hurley was made with his knowledge and consent. This deed was made to Barnett, a creditor of Hurley and his wife. The contention of the insurance company is that this deed voids the policy, which contained a change-of-title or interest and a sale-and-unconditional-ownership clause, and that even though

the wife was without authority to make the deed, the husband was estopped to deny its validity, by having consented to its execution and having received the benefits thereof. The court directed a verdict for the plaintiffs. The defendant insurance company moved for a new trial, the motion was overruled, and to this judgment it excepted.

An alienation of the insured property without the consent of the insurer voids the policy. Civil Code (1910), § 2484. Where a policy of fire-insurance contains a condition that the policy shall be void if the property be sold, or the title or possession of the property transferred or changed, and the property is conveyed by a deed to secure a debt, this constitutes such a change of title or interest as to constitute a breach of the above conditions in the policy, so as to void the policy. *Phœnix Ins. Co.* v. *Asberry,* 95 *Ga.* 792 (22 S. E. 717); *Athens Mutual Ins. Co.* v. *Evans,* 132 *Ga.* 703 (64 S. E. 993). This is true although the security deed was executed by the wife, who had only an equitable interest in the premises. *Watts* v. *Phenix Ins. Co.,* 134 *Ga.* 717 (68 S. E. 479). The security deed in this case was executed with the knowledge and consent of the husband and purported to convey all of the property insured; and therefore could have been enforced by the grantee therein against the property conveyed thereby. *Georgia Pacific Ry. Co.* v. *Strickland,* 80 *Ga.* 776 (6 S. E. 27, 12 Am. St. R. 282); *Watkins* v. *Gilmore,* 130 *Ga.* 797 (62 S. E. 32). In these circumstances the evidence demanded a finding that the insurance policy sued on in this case was void and unenforceable, and it was therefore error for the court to direct a verdict for the plaintiffs.

*Judgment reversed. Jenkins, P. J., concurs. Stephens, J., dissents.*

STEPHENS, J., dissenting. The policy, which was originally issued to Willie Lou Hurley, became later, by an indorsement attached, a policy issued to both Willie Lou Hurley and her husband, John Hurley. It appears conclusively and without controversy from the evidence that an outstanding security deed to the property, made by both Willie Lou Hurley and John Hurley to the Washington Loan and Banking Company, was recognized in the policy by a loss-payable clause payable to this company, and that at the time of the issuance of the policy, and when the house was destroyed by fire, no one had any interest in the property other than the Hur-

leys, the Washington Loan and Banking Company, and E. A. Barnett, to whom Willie Lou Hurley had, prior to the issuance of the policy, executed a deed to this and other property as security for a debt. The only questions for determination are whether, by reason of the existence of the deed from Willie Lou Hurley to Barnett, executed before the issuance of the policy, in the absence of any provision or agreement contained in the policy or added thereto recognizing or consenting to the state of the title as affected by the Barnett deed, the interest of the insured, John Hurley and Willie Lou Hurley, in the property, except as affected by the deed to the Washington Loan and Banking Company, was other than unconditional and sole ownership, or the building was on ground not owned by the insured in fee simple, or their interest in the property, where it had been stated as belonging to both of them, subject only to the deed to secure debt to the Washington Loan and Banking Company, was not truly stated.

This is a review of a second trial of this case. For a review of the first trial, see *Hurley* v. *National Ben Franklin Fire Insurance Co.*, 46 *Ga. App.* 515 (167 S. E. 917). From the testimony in the present record of Willie Lou Hurley, who did not testify on the former trial, it appears that the money which she put into the house was a gift by her to her husband. She testified as follows: "I put about $500 in the house that was burned. . . I had no particular part of the house that I paid for, I just gave the money because I wanted to help out with the house. I gave the money to my husband. . . When I turned that money over to John he did not agree to make me any deed to the property." It appears from testimony of John Hurley as delivered on a former trial and also at this trial that he considered that the house was partly his wife's and that they owned it together. He testified also that he did not make her any deed to the property and there was no agreement between them that he should make her a deed or convey to her any title or interest in the property. There was also in evidence a statement by John Hurley, made when submitting proof of loss under another policy on the same property issued to him alone, to the effect that Willie Lou Hurley advanced a portion of the cost of erecting the house from money belonging to her, but that he had not conveyed to her either the building or the land on which the house was erected. There was also in evidence the proof of loss

under the policy sued on, made by both the Hurleys, in which it was stated that the interest of the insured in the house "was that both the insured were jointly interested in the same." It also appears from the evidence that after the house was erected, Hurley and his wife borrowed some money from the Washington Loan and Banking Company on a note signed by the wife secured by the wife's deed to the property, and the money was used in payment for work which had been done in the erection of the house.

The above evidence clearly authorizes the inference that the contributions which the wife, Willie Lou Hurley, made towards the erection of the house were gifts to her husband John Hurley, and that by reason of such contributions she acquired no legal or equitable interest whatsoever in the property. The statements of John Hurley, whether contained in his testimony or made extrajudicially, to the effect that he and his wife Willie Lou Hurley, by reason of her having contributed money towards the building of the house, owned the property together, are mere conclusions by him as to the legal effect of the transaction, and do not conclusively establish any title, either legal or equitable, in Willie Lou Hurley.

Other than evidence as to Willie Lou Hurley's contributing money towards the erection of the house on land belonging to John Hurley, which under the circumstances authorizes an inference that the money thus contributed was given to John Hurley, and statements by the Hurleys that they owned the property together, there is no evidence whatsoever tending to show any right, title or interest in the property in Willie Lou Hurley when she executed the loan deed to Barnett; and that the Barnett deed conveyed any right, title or interest of either of the Hurleys in the property. While John Hurley's consent to his wife's execution of this deed, if he did consent thereto, and in the execution of which he did not join, might perhaps estop him from asserting any right or title in the property as against Barnett, he is not so estopped as against the insurance company. *Cain* v. *Busby*, 30 *Ga.* 714; *Murray* v. *Sells*, 53 *Ga.* 257 (5) ; *Harvey* v. *West*, 87 *Ga.* 553 (13 S. E. 693) ; *Equitable Loan & Security Co.* v. *Lewman*, 124 *Ga.* 190 (52 S. E. 599, 3 L. R. A. (N. S.) 879).

If John Hurley was estopped as against Barnett to deny his wife's security deed to the property to Barnett, and Barnett, by reason of John Hurley's estoppel, could enforce the security deed

as against the property to all intents and purposes as if John Hurley himself had executed it, this right in Barnett to establish title in the property by John Hurley's estoppel does not constitute such title to or lien upon the property insured as voids the policy. It has been held that an executory contract of sale, or a contract giving an option to buy, by the insured, where he does not part with possession of the property, does not, within the meaning of the policy, constitute an alienation that voids the policy. 4 Joyce on Insurance (2d ed.), § 2284, and cit. Barnett acquired no title to the property by reason of John Hurley's act. At most he acquired only a right to establish title, which he could exercise or not at his option.

It does not appear from the evidence in this record that John Hurley was as a matter of law estopped to deny his wife's deed to Barnett. It appears that he knew that his wife was executing the deed to Barnett and that he consented to it, but he said nothing. This deed, in addition to containing a description of John Hurley's property, also contained a description, and passed title to Barnett, of other parcels of land which belonged to Willie Lou Hurley. It does not appear that John Hurley knew that this deed contained a description of his property. The evidence is not conclusive that Barnett knew that John Hurley consented to his wife's execution of the deed. This at most is only inferable. There is no evidence which tends to show that Barnett, in making the loan secured by the Willie Lou Hurley deed to him, parted with his money or acted upon anything which John Hurley did.

Even if the evidence as appears in this record, where Barnett is not a party, demands an inference as a matter of law that John Hurley was estopped to deny that his wife's deed to Barnett affected the title to his property, this is only an estoppel in pais, and the title is not affected as a matter of law, in the absence of an adjudication. Estoppel is not a conveyance of title. It operates only to prevent a denial of title. *Coursey* v. *Coursey*, 141 *Ga.* 65 (80 S. E. 462); 21 C. J. 1201. John Hurley's title is not affected by this deed, in the absence of an adjudication to that effect in a suit between John Hurley and Barnett.

The jury therefore was authorized to find that Willie Lou Hurley never had any interest whatsoever in the property insured, and that therefore the execution by her of the Barnett deed conveyed

no title, either legal or equitable out of her. The Barnett deed which was executed by Willie Lou Hurley with John Hurley's consent, conveyed no title out of John Hurley, and whether or not he is estopped, as claimed, to deny this deed, its execution and existence can avail the insurance company nothing as against him. The evidence, under the law applicable thereto, authorizes the inference that the Barnett deed is to all intents and purposes, so far as this case is concerned, as if it were nonexistent. Therefore the inference is not demanded that Willie Lou Hurley had any title to the property, or that the Barnett deed, by a conveyance of title or by John Hurley's consent to its execution, voided the policy under any of its provisions.

If Willie Lou Hurley, at the time of the issuance of the policy, as is authorized by the evidence under the law applicable thereto, had no title whatsoever in the property insured, and no title to the property was conveyed by the Barnett deed, and John Hurley was not estopped from denying that the Barnett deed conveyed any title, the interest of the insured in the property was only, in so far as affected by the deed to the Washington Loan and Banking Company, sole and unconditional ownership, and the building insured was not on land not owned by the insured in fee simple, and the interest of the insured in the property when stated as being that of both of the insured, subject only to the deed to the Washington Loan and Banking Company, was, in contemplation of these provisions of the policy, not untruly stated.

The object of these provisions of the policy is to render a policy one which insures all those whose ownership in the property is such that upon them would fall the entire loss in the event of the destruction of the property by fire. Where a policy is issued to more than one person as the insured, and the sole and unconditional ownership of the insured property, subject to any incumbrances or outstanding title stated in the policy, is lodged in the insured, and no such title or interest is lodged elsewhere, the object of these provisions of the policy is not defeated merely because one of the parties insured has no right, title or interest whatsoever in the property. In Peck *v.* New London County Mutual Insurance Co., 22 Conn. 575, a suit by two parties plaintiff as the insured under a fire-insurance policy, where the policy provided that "no insurance on any property shall be valid to the insured, unless he has a good

and perfect, and unincumbered title thereto, at the time of effecting such insurance, and unless the true title of the assured to the same, and the incumbrances, if any, be fully disclosed and expressed in the proposals for insurance, and be also specified in the policy," and the two parties insured stated in their joint application for insurance that the property insured, which consisted of a building and the stock of goods therein, belonged to both parties jointly, when in fact one party owned the building and the other party owned the stock of goods, it was held "that, as the plaintiffs together had a perfect title to the property insured, the policy was not void on the ground that the true state of such title was not stated in the proposals." While it does appear that the agent of the insurance company who accepted and approved the application knew the true state of the title, the decision did not turn upon this fact. The court in the opinion said that "One or both the plaintiffs had a perfect title to it,—and the only object of the thirteenth section of the charter [above quoted] is to provide against any incumbrance there may be upon property insured. When there is an incumbrance upon the property, so that the insured have a less estate than a perfect, unincumbered title, they must state their true title to it. This means that they must state their true title, in regard to any incumbrance upon it, not that they must enter into a detail of the precise amount of interest which each one of the insured has in it. It is enough that, among all the persons insured in a single policy, they have a perfect title, or a title incumbered only in the manner which is stated in the proposals."

In Perry v. Faneuil Hall Ins. Co., 11 Fed. 482, a policy of fire-insurance was issued to a husband and his wife upon property which was the sole property of the wife. The court held that the policy was not void by reason of the clause in the policy voiding it if the interest of the insured be other than that of sole and unconditional ownership, upon the ground that it was not disclosed how the husband and wife were respectively interested in the property. The court in the opinion said: "It is of no interest to the company to know what the rights of the assured are between themselves. What they require is to be satisfied that the estate is absolute and unencumbered in the assured; or, if not, how and to what extent it is encumbered, or what estate, less than a fee-simple, is owned by the assured."

In 3 Cooley's Briefs on Insurance (2d ed.), 2171, 2176, it is stated that "The purpose in requiring the insured to have the sole and unconditional ownership of the insured property is to give protection only to those upon whom the loss insured against would inevitably fall but for the insurance, and to avoid taking risks for those whose lack of interest or whose contingent interest in the property might tend to encourage carelessness or wrongdoing in its use or preservation;" and "to be unconditional and sole, within the meaning of the phrase, the interest or ownership of the insured must be completely vested, not contingent or conditional, nor in common or jointly with others, but of such a nature that the insured would alone sustain the entire loss if the property be destroyed, whether his title be legal or equitable." Phenix Ins. Co. v. Hilliard, 59 Fla. 590 (52 So. 799, 138 Am. St. R. 171), is cited. In that case it is stated that "The just and reasonable purpose of insurance policies in requiring the insured to have the 'unconditional and sole ownership' of the property insured is to give protection to only those upon whom the loss insured against would inevitably fall but for the insurance, and to avoid taking risks for those whose lack of interest or whose contingent interest in the property insured might tend to encourage carelessness or wrongdoing in the use or preservation of the property." In Rochester German Ins. Co. v. Schmidt, 162 Fed. 447, it was held that "Insured's ownership is 'sole' when no one other than insured has any interest in the property as owner, and is 'unconditional' when the quality of the estate is not limited or affected by any condition."

The evidence authorizes the inference that the policy was not voided under its provisions, as contended by the defendant insurance company. Irrespective of whether it was error to direct a verdict for the plaintiffs, I can not concur in the conclusion that it appears as a matter of law that the policy was voided by the execution or the existence of the Barnett deed which was executed by Willie Lou Hurley, the wife, because, as contended, the husband, John Hurley, consented to its execution, and Barnett could have enforced the deed "against the property conveyed thereby," and that as a matter of law a verdict and judgment for the defendant is demanded. I therefore dissent from the judgment of reversal, based upon the ground that a verdict for the defendant is demanded.

Nothing here stated is in conflict with anything formerly ruled

in this case as reported in 46 *Ga. App.* 515. It appears from the record on the former trial, which was under review by this court in that case, that there was no evidence, as in the case now before the court, to the effect that the money which the wife put in the property was a gift by her to the husband. She did not testify upon the former trial. This court in that case reversed and set aside a directed verdict for the defendant insurance company. It was there held that under the evidence in the record as there presented, the wife had an equitable interest in the property by virtue of having put her money into the erection of the house, which was recognized and consented to by the husband, and that, since it there appeared that the wife's execution of the Barnett deed, which was without the knowledge and consent of the husband, passed nothing, the wife had an insurable interest in the property along with the husband, and the policy was not void by reason of the violation of any of its provisions.